Ramón A. Rivera Rivera, Administrador del Fondo del Seguro del Estado, recurrente, *v.* Comisión Industrial de Puerto Rico, etc., demandados.

Número: O-71-133      Resuelto: 14 de enero de 1972

*Juan P. Quiñones Rivera, Milagros Muñiz Bou, Manuel Candelario Muñiz* y *Leoncio Carrasquillo Suárez,* abogados del recurrente.

El Juez Asociado Señor Ramírez Bages emitió la opinión del Tribunal.

Recurre ante nos el Administrador del Fondo del Seguro del Estado de la resolución de la Comisión Industrial de 26 de febrero de 1971 al efecto de que no procede descontar la compensación de $6,000 pagada al obrero lesionado por el recurrente con motivo de un accidente del trabajo, que le produjo una condición de glaucoma, de la compensación por incapacidad total resultante de dicha lesión, luego de caerse de sus pies inmediatamente después de recibir un tratamiento de su condición de glaucoma. Concluimos que procede el referido descuento y, en tal virtud, que procede revocar la resolución de la Comisión Industrial.

Los hechos del caso, no controvertidos, según los relaciona la Comisión Industrial, son los siguientes:

"En el presente caso el lesionado sufrió un accidente del trabajo allá para junio de 1965 como consecuencia del cual se le reconoció una incapacidad de un 68% de incapacidad total permanente, mediante decisión del Administrador del Fondo del Seguro del Estado de 13 de septiembre de 1967.

El día 2 de junio de 1967 y estando recibiendo el lesionado tratamiento, sufrió un segundo accidente intercurrente, aceptado por el Asegurador, en el cual se lesionó la extremidad inferior izquierda, recibiendo tratamiento en descanso por varios meses, al cabo de los cuales se le fijó una incapacidad de un 5% de las funciones fisiológicas del pie izquierdo por el tobillo.

Posteriormente, y en cuanto al primer accidente, el lesionado solicitó vista médica y en dicha vista fue referido a examen por el Oftalmólogo Consultor de ese Organismo, quien recomendó se le fijara al obrero una incapacidad de un 20% adicional, o sea, una incapacidad total por el primer accidente equivalente al 88% de incapacidad total permanente.

El Administrador del Fondo del Seguro del Estado, posteriormente, revaluó el caso en su totalidad y mediante decisión notificada el 28 de agosto de 1968, resolvió que 'tomándose en consideración todos los factores incapacitantes' el lesionado había quedado totalmente incapacitado.

Mediante esa misma decisión se ordenó se dedujera de la compensación del lesionado la cantidad de $6,000.00 ya que éstos le habían sido pagados por la incapacidad parcial permanente."

La disposición legal invocada es la parte del Art. 3 de la Ley de Compensaciones por Accidentes del Trabajo (11 L.P.R.A. sec. 3) que se titula "Incapacidades Preexistentes." La parte pertinente de esta disposición lee así:

"En todos aquellos casos en que un obrero, por efecto de un accidente del trabajo sufriera la agravación o aumento de una incapacidad anterior no proveniente de un accidente del trabajo, la incapacidad resultante del accidente le será compensada incluyendo la incapacidad anterior; pero en aquellos casos en que un obrero sufriera la agravación o aumento de una incapacidad preexistente causada por un accidente anterior y por la cual cobró la compensación correspondiente, se le descontará, de la compensación a que tenga derecho por la incapacidad global resultante, el montante de la compensación que recibió por su incapacidad preexistente; disponiéndose, *que en todos aquellos casos en que un obrero sufra la agravación o aumento de una incapacidad preexistente y dicha agravación o aumento resultare en la pérdida total y permanente del miembro u órgano afectado o resultare en la pérdida total y permanente del miembro u órgano afectado o resultare en la pérdida total y permanente de las funciones fisiológicas generales, el obrero será compensado por la incapacidad total sin tomar en consideración la incapacidad preexistente aun cuando haya cobrado compensación por esta.*" (Bastardillas nuestras.)

Las partes aceptan que el segundo accidente es un "accidente intercurrente", es decir una secuela compensable. Este término quiere decir que una lesión subsiguiente, sea una agravación de otra anterior o una lesión distinta, es compensable, si es el resultado natural o directo de una lesión primaria compensable.

Resolvió la recurrida que el descuento en cuestión no procedía porque "El estatuto claramente establece que cuando. un obrero sufre la agravación o aumento de una incapacidad preexistente resultando dicha agravación o aumento en la pérdida total o permanente de las funciones fisiológicas generales, el obrero será compensado por la incapacidad total sin tomar en consideración la incapacidad preexistente, aun

cuando haya cobrado compensación por ésta."; que "Cuando el legislador no distingue nosotros estamos impedidos de hacerlo, por lo tanto si el segundo accidente es compensable, bien sea porque es un accidente en el curso del empleo y como consecuencia del mismo o ya sea un accidente de naturaleza intercurrente que ocasiona el aumento o agravación de una incapacidad anterior, es de aplicación la disposición legal que trata sobre incapacidades preexistentes."; y que "Toda la argumentación del Administrador en cuanto a que un accidente intercurrente está vinculado al accidente original es correcto, pero ello no quiere decir que por tal razón ambos accidentes (original e intercurrente) constituyan un solo accidente. No obstante ser el accidente intercurrente secuela de o estar vinculado al primer accidente, ya sea directa o indirectamente, no quiere decir que ambos accidentes constituyan un solo accidente. Estos son eventos distintos ocurridos en distintas fechas, ambos compensables de acuerdo con la interpretación justa y racional que debe dársele a la disposición legal que trata sobre incapacidades preexistentes."

■ Cuando la lesión posterior a una lesión inicial compensable surge de una actividad en el "quasi curso" del empleo, como es el caso de la lesión sufrida con motivo de una caída en el curso de una visita al médico para tratamiento de la lesión inicial, esta segunda lesión es compensable por considerarse que surge "en el curso del empleo" o que tiene una relación causal con el accidente original. Larson *Workmen's Compensation Law*, Vol. 1, secs. 13.11 y 13.13 (1968). Véanse, *Andras* v. *Donovan*, 414 F.2d 241 (5th Cir. 1969); *Immer & Co.* v. *Broshnahan*, 152 S.E.2d 254 (Va. 1967); *Ada Iron Metal Company* v. *Tarpley*, 420 P.2d 886 (Okla. 1966); *Lieberman* v. *Sunray Drug Company*, 204 A.2d 783 (Pa. Super. Ct. 1964); *Fitzgibbons* v. *Clarke, et al.*, 285 N.W. 528 (Minn. 1939); *Goldberg* v. *954 Marcy Corporation*, 12 N.E.2d 311 (Ct. App. N.Y. 1938); *Travellers Insurance Co.* v. *McLellan*, 302 F.Supp. 351 (E.D. N.Y. 1969).

La disposición con respecto a incapacidades preexistentes del Art. 3 de la Ley de Compensaciones cubre tres situaciones resultantes *de un accidente del trabajo,* a saber:

1.—La compensación por un accidente del trabajo que agrava una incapacidad anterior no proveniente de un accidente del trabajo—en este caso la compensación incluirá la incapacidad anterior;

2.—Cuando con motivo del accidente del trabajo se agrava o aumenta una incapacidad preexistente causada por un accidente por la cual se compensó, se descontará de la compensación por la incapacidad global resultante la compensación previamente pagada, y

3.—*Cuando el accidente del trabajo causa la agravación de una incapacidad preexistente, y dicha agravación resultare en la pérdida de un miembro u órgano afectado o la pérdida total y permanente de las funciones fisiológicas generales, se compensará por la incapacidad total sin tomar en consideración la incapacidad preexistente aun cuando haya cobrado por ésta.*

Sostiene el recurrente que las lesiones ocasionadas por un "accidente intercurrente", si se compensan se hace dentro del accidente del trabajo al cual pertenecen por ser parte de la misma transacción; que la resolución de la recurrida produce el contrasentido de que una persona que sufre un solo accidente del trabajo cobra como si hubiera sufrido dos accidentes del trabajo; que de sostenerse la interpretación del Art. 3 de la Ley de Compensación por Accidentes del Trabajo que en este caso ha hecho la Comisión Industrial, no sólo se tendría que presupuestar para estos costos no planificados, sino que se estaría incurriendo en un incumplimiento de la garantía constitucional de la igualdad en la protección de las leyes.

Añade el Administrador que es improcedente el que un obrero, bajo las circunstancias de este caso, "tenga un mayor derecho por un solo accidente" que un obrero de 23 años que por un severo accidente del trabajo queda parapléjico.

Los hechos del caso relacionados por la recurrida en su resolución de 26 de febrero de 1971, no demuestran que el segundo accidente, es decir, la caída en que se lesionó el obrero en un tobillo, estuviera relacionada con su enfermedad de glaucoma a su vez relacionada con el primer accidente. Tampoco demuestra que dicha caída agravara la condición de glaucoma del obrero. No obstante, aparece del récord que, con motivo del segundo accidente, el Administrador "le fijó [al obrero lesionado] otra incapacidad equivalente a la pérdida de un 5% de las funciones fisiológicas del pie izquierdo por el tobillo, resultante la misma de un accidente intercurrente de los protegidos por la Ley de Compensaciones por Accidentes del Trabajo . . . la cual no se hizo efectiva por habérsele ordenado pago al lesionado por la suma de $6,000 que es el máximo que autoriza la ley para estos casos de incapacidad parcial permanente."

Los casos previamente citados sostienen la determinación del Administrador de declarar al segundo accidente compensable bajo la ley en vigor. Pero no hemos encontrado en el récord prueba o constancia alguna demostrativa de que la glaucoma de que padecía el lesionado fuera agravada por el segundo accidente al extremo de producir la incapacidad total del obrero lesionado.

■ A los fines de evitar la deducción de la compensación original de $6,000 de la compensación por la incapacidad total, de acuerdo con la tercera alternativa provista por la disposición sobre incapacidades preexistentes del referido Art. 3, *era necesario establecer, y no se estableció*, que un segundo accidente del trabajo *agravó* la incapacidad preexistente al extremo de resultar en "la pérdida total y permanente de las funciones fisiológicas generales" para que "se compensara por la incapacidad total sin tomar en consideración la incapacidad preexistente aun cuando haya cobrado por ésta."

En el caso ante nos, por el contrario, concluyó la Comisión Industrial que con posterioridad al segundo accidente, a petición del lesionado, y en cuanto al primer accidente, el lesionado fue examinado por el Oftalmólogo consultor del Fondo del Seguro del Estado quien recomendó se le fijara una incapacidad adicional de veinte por ciento (20%), o sea, una incapacidad total por el primer accidente por lo que el recurrente resolvió que "el lesionado había quedado totalmente incapacitado."

Lo anterior más bien demuestra que la glaucoma relacionada con el primer accidente se agravó por causas propias y usuales en esa enfermedad y no por razón del segundo accidente, no habiéndose establecido que la segunda lesión causase la agravación de la primera al extremo de incapacitar totalmente al lesionado.

De lo expuesto concluimos que la referida disposición titulada "Incapacidades Preexistentes" del Art. 3 de la Ley de Compensaciones por Accidentes del Trabajo no es aplicable a las circunstancias de este caso. Por el contrario, se trata de una revaloración de una incapacidad parcial ocasionada por el primer accidente. Procede, en tal virtud, que el Fondo del Seguro del Estado pague al lesionado la diferencia entre la compensación correspondiente a su incapacidad total resultante de la revaloración de su condición de glaucoma y la compensación ya pagada por el por ciento de incapacidad parcial que se le atribuyó originalmente por la lesión resultante de dicho primer accidente.

Siendo ello así, *debe revocarse el dictamen de la Comisión Industrial en este caso y ordenarse la deducción proporcional de los $6,000 que se le ha pagado al lesionado de los pagos mensuales a que tiene derecho, según se provee en la decisión del recurrente de 28 de agosto de 1968.*

El Juez Presidente, Señor Negrón Fernández, al igual que el Juez Asociado, Señor Hernández Matos, no intervino.