FELIPE IRIZARRY FERNÁNDEZ, (Obrero), ISAAC MÁRQUEZ HERNÁNDEZ, (Patrono), *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, demandada y recurrida, FONDO DEL SEGURO DEL ESTADO, asegurador y recurrente.

Número: O-76-376     Resuelto: 31 de mayo de 1977

*José Angel Lugo Irizarry, Guillermo Figueroa Prieto* y *Francisco Falú Lebrón,* abogados del Fondo del Seguro del Estado; *Edelmiro Sordevila,* abogado del obrero.

SENTENCIA

El reclamante se cayó por las escaleras de su casa mientras bajaba al patio para dar de comer a unas gallinas. De-

claró que la caída se debió a un fuerte dolor de cintura que hizo que se dejara caer por la escalera. Sufrió la fractura del brazo izquierdo y golpes que alegadamente le agravaron una dolencia de la espalda [1] que le había sido producida por un accidente del trabajo ocurrido a fines de 1974 mientras levantaba un saco de habichuelas de cien libras. El diagnóstico de la caída original fue de esguince lumbosacral, por lo cual el Fondo del Seguro del Estado le fijó entonces una incapacidad parcial equivalente a la pérdida de un 5% de las funciones fisiológicas generales. El reclamante sostiene que el segundo accidente es el resultado natural o directo de la lesión sufrida en el primer accidente. El Fondo rechazó su alegación pero la Comisión Industrial determinó que el segundo accidente era de tipo "intercurrente" y por tanto compensable. El Fondo acudió ante nos.

Un estudio de los hechos y las cuestiones de derecho envueltas en este caso nos convence que debe revocarse, como por la presente se revoca, la resolución dictada por la Comisión Industrial de Puerto Rico en 16 de julio de 1975 en el caso C.I. 76-4-0566, Felipe Irizarry Fernández, Lesionado, que resolvió que el trabajador lesionado sufrió un accidente intercurrente y que ordenó al Administrador del Fondo del Seguro del Estado a que brindara al trabajador la íntegra protección de la Ley.

Así lo pronunció y manda el Tribunal y lo certifica el Secretario. El Juez Presidente, Señor Trías Monge, y el Juez Asociado Señor Irizarry Yunqué disienten en voto separado. El Juez Asociado Señor Martín emitió un voto concurrente separado, al cual se unen los Jueces Asociados Señores Dávila, Torres Rigual y Negrón García. El Juez Asociado Señor Díaz Cruz emitió un voto concurrente separado, al cual se une el Juez Asociado Señor Rigau.

(Fdo.) Ernesto L. Chiesa
*Secretario*

[1] Fue operado de los discos vertebrales después del segundo accidente.

—O—

Voto concurrente emitido por el Juez Asociado Señor Martín al cual se unen los Jueces Asociados Señores Dávila, Torres Rigual y Negrón García.

San Juan, Puerto Rico, a 31 de mayo de 1977

Sabemos que el Tribunal Supremo de Puerto Rico es un tribunal de apelación y no uno de casación, y que no debemos limitarnos "a infracciones de ley o quebrantamientos de forma, según fueren señalados, alegados o salvados por los litigantes, o según se hiciera constar en sus exposiciones y excepciones sino que con el más alto fin de justicia", podemos "entender en todos los hechos y tramitaciones en la causa tal como aparecieron en autos, considerando en igual forma sus méritos para la mejor administración de justicia y del derecho, y evitar injusticias." 4 L.P.R.A. sec. 36, véanse: *Pueblo* v. *Colón Obregón*, 102 D.P.R. 369, 372–3 (1974) ; *Pérez* v. *Acevedo Quiñones*, 100 D.P.R. 894, 901 (1972) ; *Dávila* v. *Valdejully*, 84 D.P.R. 101, 103–4 (1961).

Considero que el derecho a compensación del reclamante gira en torno a si su caída por las escaleras de su casa fue un resultado natural o directo de la lesión original sufrida por el reclamante. De haber sido ésa la situación estaría el accidente dentro del alcance del término "accidente intercurrente" que hemos desarrollado jurisprudencialmente. En *Admor., F.S.E.* v. *Comisión Industrial*, 100 D.P.R. 363, 365 (1972), definimos la expresión "accidente intercurrente" en el sentido de que "una lesión subsiguiente, o sea una agravación de otra anterior o una lesión distinta, es compensable, si es el resultado natural o directo de una lesión primaria compensable", y ocurre en el "cuasi curso" del empleo.

Las determinaciones de hecho de la Comisión no contienen hechos que revelen que la caída por las escaleras hubiere sido el resultado natural o directo de la primera lesión. Las con-

clusiones de derecho, al referirse a la prueba pericial médica, lo hacen suscintamente al expresar lo siguiente:

"El hecho de que el obrero se encontrara en su casa y hubiera sido dado de alta, no derrota una alegación de accidente intercurrente siempre que se establezca la regla básica de que la lesión subsiguiente sea el resultado natural o directo de una lesión primaria compensable.

A esos efectos el testimonio de nuestro Médico Consultor, Dr. Rafael Meza Donado, fue claro y convincente."

Comoquiera que el reclamante había sufrido anteriormente un accidente compensable, consistente de una lesión en la espalda, denominada "esguince lumbosacral" (¹) mientras se encontraba levantando un saco de habichuelas de cien libras, para lo que se le fijó una incapacidad parcial equivalente a la pérdida de un 5% de las funciones fisiológicas generales, que es el mínimo que se fija por una incapacidad parcial, surgen dudas de si su condición era de tal naturaleza que pudiese hacerle perder el balance e irse escaleras abajo. No hay determinación alguna de que el reclamante continuara sufriendo de los efectos resultantes de la primera lesión. Por el contrario se implica que había sido dado de alta.

Es principio reiterado el que en el ejercicio de nuestra facultad revisora tenemos amplia discreción para apreciar la prueba pericial y como consecuencia adoptar nuestro propio criterio en la apreciación o evaluación de la misma. *Alonso García* v. *Comisión Industrial*, 103 D.P.R. 712 (1975) y casos allí citados.

Un examen de la prueba pericial médica que surge del récord taquigráfico de la vista pública celebrada ante la Co-

---

(¹) Esguince se define como "torcedura o distensión violenta de una articulación, sin luxación, que puede llegar a la rotura de algún ligamento o de fibras musculares próximas. Se caracteriza por dolor, tumefacción rápida e incapacidad para los movimientos." *Diccionario Tecnológico de Ciencias Médicas*, Cardinal, 4ta. ed. 1952, Ed. Salvat. La frase "sin luxación" significa que no hay dislocación permanente de una parte, especialmente de las superficies articulares de los huesos. *Id.*

misión Industrial en 8 de julio de 1976 me convence de que la conclusión del perito médico de la Comisión Industrial, Dr. Rafael Meza Donado, no explica satisfactoriamente la conexión entre el accidente original y el alegado accidente intercurrente, aparte de las expresiones generales que hizo el Dr. Meza a través del interrogatorio en el sentido de que después del segundo accidente le hicieron un electromiograma que salió positivo de hernia nucleo pulposa por lo que deduce que el accidente es intercurrente. El Dr. Meza no parece haber examinado al paciente hasta el día de la vista en que expresa: "Examinado el paciente en el día de hoy encuentro que tiene una faja ortopédica y que fue intervenido quirúrgicamente." No hay testimonio adicional del Dr. Meza, fuera de lo que he sintetizado precedentemente, que establezca con alguna precisión que la lesión subsiguiente, o sea, la caída por los escalones del patio de la casa del trabajador lesionado, sea una agravación de la caída anterior con el saco de habichuelas. En otras palabras, si la segunda caída es el resultado natural o directo de una lesión primaria compensable, lo que colocaría al segundo accidente dentro de la definición del concepto "accidente intercurrente".

El Dr. Meza admite que el lesionado fue dado de alta del primer accidente con una incapacidad parcial permanente de 5% de las funciones fisiológicas generales y se le hizo un diagnóstico de esguince lumbosacral relacionado, que apeló y en una vista médica celebrada siete meses después (julio) del accidente le fue confirmada la decisión por el Fondo, que no compareció a otra vista celebrada dos meses después (septiembre), que compareció a una al mes siguiente al segundo accidente y como resultado fue referido al neurólogo quien encontró hernia pulposa.

Los peritos médicos deben apartarse lo más posible de la especulación y la conjetura pues hemos de rechazar toda prueba que equivalga a especulación o conjetura basada en hechos subsidiarios que no sostengan adecuadamente las con-

clusiones a que llegan los peritos. En el pasado hemos dejado sin efecto conclusiones de peritos que no están sostenidas por la prueba. *Alonso García* v. *Comisión Industrial*, supra. La Comisión Industrial debe ser exigente con el testimonio de los peritos especialmente cuando no son los médicos que han intervenido directamente con el tratamiento del lesionado. Este Tribunal en su misión revisora, debe tener ante sí un testimonio médico confiable que le permita llegar a sus propias conclusiones si fuere menester. En este caso el testimonio médico está huérfano de hechos probatorios que puedan conducir a un análisis inteligente del problema planteado.

Este Tribunal ha expresado en el pasado que el Fondo del Seguro del Estado no es un asegurador absoluto de la salud o de la vida de los trabajadores por toda clase de accidente que puedan éstos sufrir. La extensión de la cubierta del sistema a accidentes no protegidos afectan la estabilidad del Fondo y el encarecimiento indebido de las primas en perjuicio de patronos y empleados. Véase: *Admor., F.S.E.* v. *Comisión Industrial*, 101 D.P.R. 56, 58 (1973). Por ello debemos asegurarnos de la observancia de que estén presentes los tres requisitos de ley para que un accidente sea compensable, a saber: (1) provenga de cualquier acto o función del trabajador, (2) sea inherente al trabajo o empleo del trabajador, y (3) ocurra en el curso de éste. 11 L.P.R.A. sec. 2, *Montaner* v. *Comisión Industrial*, 53 D.P.R. 197 (1938) y casos allí citados.

Jurisprudencialmente hemos extendido el tercer requisito de que el accidente ocurra en el curso del trabajo para incluir los accidentes intercurrentes que sean resultado natural o directo de la lesión primaria. No estoy convencido con los hechos que surgen del expediente ante nos de que el accidente primario consistente de un esguince lumbosacral, para el que se fijara una compensación mínima equivalente a la pérdida de un 5% de las funciones fisiológicas generales, haya sido el motivo del segundo accidente que motiva esta reclamación.

Y más aún, entiendo que este accidente cae bajo la excepción del Art. 2 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 2, por haber ocurrido fuera del curso o "cuasi curso" del empleo.

Por las razones expuestas concurro con la sentencia emitida que revoca la resolución dictada por la Comisión Industrial de Puerto Rico en el caso de epígrafe.

—O—

Voto disidente en parte y concurrente en parte emitido por el Juez Presidente, Señor Trías Monge, al que se une el Juez Asociado, Señor Irizarry Yunqué.

San Juan, Puerto Rico, a 31 de mayo de 1977

El señor Irizarry Fernández sufrió un accidente del trabajo hacia fines de 1974. Ocurrió la lesión al levantar un saco de habichuelas de cien libras. Se le reconoció al obrero un cinco por ciento de incapacidad general por una condición de esguince lumbosacral.

Unos seis meses después de haber sido dado de alta por el Fondo del Seguro del Estado, el señor Irizarry Fernández sufrió un segundo accidente en su hogar. Relata que cuando bajaba las escaleras de su casa sintió un fuerte dolor en la cintura y cayó por las mismas, sufriendo la fractura del brazo izquierdo y lesiones que agravaron su dolencia en la espalda, al extremo de requerir una operación de los discos.

El trabajador solicitó sin éxito compensación adicional del Fondo y luego recurrió en alzada a la Comisión Industrial. El perito médico de la Comisión expuso que a su juicio las lesiones sufridas en el accidente eran el resultado natural o directo de la lesión anterior. La Comisión le dio entero crédito a su testimonio, resolvió que se trataba de un accidente intercurrente o secuela compensable y en consecuencia ordenó al Fondo que le brindase al obrero la íntegra protección de la ley. El Fondo acudió ante nos en solicitud de revisión.

El Fondo del Seguro del Estado sostiene en esencia que el segundo accidente no es de índole intercurrente por haber ocurrido en el hogar y no hallarse para entonces el obrero bajo tratamiento médico. Consideramos que tal interpretación es indebidamente restrictiva. No halla apoyo en la ley, la doctrina o la jurisprudencia.

En *Admor., F.S.E.* v. *Comisión Industrial*, 100 D.P.R. 363, 365 (1972), expresamos que el término "accidente intercurrente" significa que "una lesión subsiguiente, sea una agravación de otra anterior o una lesión distinta, es compensable, si es el resultado natural o directo de una lesión primaria compensable." Para anular el derecho a compensación tiene que mediar una causa interventora que rompa la cadena de causalidad. 1 Larson, *Workmen's Compensation Law*, sec. 13.00, pág. 192-59. Expone Larson:

"Cuando se demuestra que la lesión primaria ha surgido en el curso del empleo, toda consecuencia natural que fluye de ella surge asimismo en el curso del empleo, a menos que se deba a una causa interventora independiente atribuible a la propia conducta intencional del reclamante." (*Loc. cit.*) (Traducción nuestra.)

Véase: 6 Schneider, *Workmen's Compensation Law*, 3ª ed., 1948, págs. 53–54.

Estos principios no son de aplicación fácil. En ciertas situaciones es muy sencillo determinar si la lesión subsiguiente es el resultado directo de una lesión primaria compensable. La relación de causalidad es claramente discernible. 1 Larson, *op. cit.*, sec. 13.11, pág. 192.60 *et seq.* En otros, el proceso se complica. La cadena de causalidad es más larga. Aumenta la posibilidad de su rotura por una causa interventora independiente. Cada situación de hechos ha de examinarse por separado.

Las situaciones a las que se ha enfrentado hasta ahora el Tribunal pertenecen a órdenes relativamente simples. Hemos resuelto que las lesiones recibidas mientras el obrero se halla

bajo tratamiento o en el curso de una visita al médico para dicho fin son compensables de haber sido causadas por una lesión primaria sufrida en un accidente del trabajo. *Montaner v. Comisión Industrial*, 57 D.P.R. 233 (1940); *Cordero v. Comisión Industrial*, 62 D.P.R. 429 (1943); *Admor., F.S.E. v. Comisión Industrial*, 100 D.P.R. 363 (1972). El Fondo del Seguro del Estado aparentemente considera que la definición de "accidente intercurrente" se limita a las circunstancias de tales casos, (¹) mas hemos visto que su ámbito es mayor, aunque no irrestricto. El hecho de que el segundo accidente ocurra en el hogar no impide compensación si el mismo es el resultado directo de una lesión primaria compensable. *State Home & Training School v. Armstrong*, 520 P.2d 1069 (Colo. App. 1974) (caída por escalera del sótano de la casa, relacionada con lesión compensable al pie derecho); *Gower v. Mackes*, 132 A.2d 880 (Pa. Supr. 1957) (caída en el hogar que ocasiona lesión permanente a la cadera, relacionada con lesión compensable a la rodilla); *Unger & Mahon, Inc. v. Lindston*, 9 A.2d 604 (Md. App. 1939) (caída en el hogar que ocasiona fractura de cadera relacionada con lesión compensable al tobillo); *State Compensation Insurance Fund v. Industrial Accident Commission*, 1 Cal. Rptr. 73 (App. 1959) (lesión sufrida con una sierra eléctrica en el hogar relacionada con lesión compensable al ojo). Tampoco es necesario que el obrero continúe bajo tratamiento médico por la lesión primaria, *State Compensation Insurance Fund v. Industrial Accident Commission*, supra, o que se halle todavía empleado, *Day v. Zenith Paper Stock & Rag. Co.*, 134 N.W.2d 4 (Minn. 1965); *Abney & Eaves, Inc. v. Redeker*, 303

---

(¹) De aceptarse la posición del Fondo se llegaría a conclusiones curiosas. El Fondo acepta que de ocurrir la segunda lesión rumbo al dispensario procedería a otorgar compensación. En el caso presente, la caída sucede al dirigirse el obrero a darles maíz a unas gallinas. Si hubiese ocurrido en exactamente la misma forma y el mismo lugar, pero camino al dispensario, el derecho a compensación es incuestionable. No hay cabida en un sistema jurídico justo para este género de distinciones mecánicas.

P.2d 417 (Okla. 1956). Lo básico es el establecimiento de la indispensable relación causal entre las dos lesiones. La terminación del tratamiento médico es ciertamente un factor, junto a otros, para resolver si existe el nexo causal requerido en una situación específica, pero su presencia no derrota de por sí automáticamente un posible derecho a compensación.

El Fondo argumenta que el Art. 2 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 2, impide compensación por accidentes ocurridos en el hogar. Dicho artículo dispone que los beneficios de la Ley no pueden extenderse a "aquellas personas que trabajen en sus domicilios." Esta exclusión se refiere a todas luces a aquellos que reclamen compensación por una lesión primaria. *Admor.*, *F.S.E.* v. *Comisión Industrial*, 101 D.P.R. 56 (1973). No hemos aplicado nunca tal precepto a casos de accidentes intercurrentes.

La prueba en el caso de autos sostiene la determinación de la Comisión Industrial. El médico de la Comisión expresó que a su juicio el segundo accidente fue resultado de la lesión primaria. El obrero declaró que sintió un fuerte dolor en la cintura inmediatamente antes de caer y que nunca recuperó del todo de la primera lesión en la espalda. No se presentó prueba para refutar estos testimonios. No hay otra base en el récord que demuestre que medió una causa interventora. En tales circunstancias es nuestro deber sostener la determinación de compensabilidad.

—O—

Voto separado del Juez Asociado Señor Díaz Cruz al cual se une el Juez Asociado Señor Rigau.

San Juan, Puerto Rico, a 31 de mayo de 1977

Un obrero que se lastimó la cintura al levantar un saco de habichuelas fue tratado y dado de alta por el Fondo del Seguro del Estado, reconociéndosele una incapacidad del 5% de las funciones fisiológicas generales por una condición de

esguince lumbosacral. No regresó al trabajo; la CRUV le dio un apartamento y se acogió al programa de cupones de alimentos. Diez meses después, hallándose en su casa, y mientras se dirigía a echarle maíz a tres gallinas, le dio un dolor en la cintura y "tuvo que dejarse caer" por la escalera (Resolución de la Comisión, pág. 2). Hubo de ser operado de discos. Sobre este segundo accidente fueron testigos ante la Comisión el propio lesionado, su señora esposa y un médico que calificó la lesión subsiguiente como resultado natural o directo de la lesión primaria compensable. Con esta prueba la Comisión Industrial revocó al Fondo del Seguro del Estado que había negado compensación y ordenó se compensara el segundo accidente como "intercurrente". Notamos la errónea aplicación del concepto "cuasi curso" del empleo enunciado en *Admor., F.S.E.* v. *Comisión Industrial*, 100 D.P.R. 363, 366 (1972), y expedimos orden para mostrar causa inclinados a revocar.

¿Podrá el Fondo del Seguro del Estado absorber la sangría de una avalancha de "accidentes intercurrentes" compensables según la posición adoptada por el Juez Presidente? Bajo su doctrina se impone al Fondo la condición de asegurador *ad perpetuam* en incontables accidentes en la casa, en la barra, en el hipódromo, en la calle, en el avión hacia Nueva York y hasta presenciando el Desfile Puertorriqueño o la llegada del Concorde. El Fondo del Seguro del Estado sufre las estrecheces de nuestra economía y no debe desviar sus limitados recursos en detrimento de los disponibles para compensar las víctimas de accidentes primarios.

No veo "distinción mecánica" en restringir la compensabilidad del accidente intercurrente a lesiones recibidas mientras el obrero se halla bajo tratamiento o en el curso de una visita al médico, siguiendo los precedentes, (1) que es la posición del Administrador. Esta clasificación responde a la nece-

---

(1)*Montaner* v. *Comisión Industrial*, 57 D.P.R. 233 (1940); *Cordero* v. *Comisión Industrial*, 62 D.P.R. 429 (1943); *Admor., F.S.E.* v. *Comisión Industrial*, 100 D.P.R. 363 (1972).

sidad de comprobar la legitimidad de la reclamación,[2] de limitar la compensación a casos cubiertos por primas impuestas y pagadas, y a su obligación de proteger la integridad funcional del Fondo. Aquí tenemos un obrero dado de alta con mínima incapacidad (5%) que sufre un accidente casero, compitiendo en la participación de fondos digamos contra la viuda y los hijos de un obrero que muere o se incapacita totalmente en el trabajo.

La teoría de accidente intercurrente ha de contenerse dentro del propósito vital de la Ley de Compensaciones por Accidentes del Trabajo. Se exceptúan expresamente (de sus disposiciones), Art. 2 (11 L.P.R.A. sec. 2) aquellos obreros cuya labor sea de carácter accidental o casual y no esté comprendida dentro del negocio, industria, profesión u ocupación de su patrono y además aquellas personas que trabajen en sus domicilios. En puro principio de provisión de remedio social nadie podrá discutir el derecho al mismo por los trabajadores casuales y los de domicilio. En un país con tan alto índice de desempleo como el nuestro, el trabajo casual y el que se hace en la casa es fuente tradicional de subsistencia. Es mucho más respetable el derecho de estos trabajadores excluidos que el reclamo del recurrido que se cae por la escalera de su casa "cuando iba a echarle maíz a tres gallinas que tenía." Esta Ley hay que interpretarla en con-

---

[2] Hay intercurrentes con características de "accidentes exceptuados" (11 L.P.R.A. sec. 5). El Art. 4 de la Ley (11 L.P.R.A. sec. 5) enmendado en 1962 declara:

"No son accidentes compensables del trabajo y no darán por consiguiente, derecho a compensación al obrero o empleado o a sus beneficiarios de acuerdo con este Capítulo, los que ocurren en las siguientes circunstancias:

"(1) Al tratar el obrero o empleado de cometer un delito o de lesionar a su patrono o a cualquier otra persona, o cuando voluntariamente se causare la lesión.

"(2) Estando el obrero o empleado embriagado, siempre que la embriaguez fuere la causa del accidente.

"(3) Cuando la imprudencia temeraria del obrero o empleado haya sido la única causa de la lesión."

frontación con las realidades socioeconómicas de nuestro medio. Ante estas realidades, y para preservar la solvencia del Fondo para atender a accidentes primarios se resignó el legislador a exceptuar los trabajadores casuales y a domicilio. No fue un discrimen desalmado contra estos obreros, fue una medida de previsión impuesta por los limitados recursos del Fondo al que no puede imponerse la carga onerosa de cubrir accidentes por los que no se han computado ni cobrado primas, ni responsabilidad por accidentes ocurridos en sitios donde el Fondo no supervisa las condiciones de seguridad y sobre los cuales se dificulta la investigación depuradora. Todo ese cuidadoso diseño del legislador para que no se pierda el limitado efecto de este remedio social, [3] se desploma con la indebida ampliación del concepto de accidente intercurrente. El Derecho no es caldo para tubo de ensayo; es savia de bienestar y orden de la sociedad en que aflora. El Fondo del Seguro del Estado no debe estar amarrado como asegurador por vida con todo obrero a quien se le reconozca una incapacidad, aunque sea la nominal de 5%, obligado a hacer reservas en su presupuesto para compensar accidentes intercurrentes aunque ocurran en Disneyland o en la Torre de Pisa. Esto resultaría en la creación de una cantera de reclamaciones inmeritorias, prolífera y detrimental para el orden jurídico en general.

Los remedios sociales deben administrarse con austero sentido de proporción y de equidad. Mermar el acervo del Fondo del Seguro del Estado destinado al alivio de situaciones trágicas en la vida del trabajador y sus dependientes, desviar esos contados recursos hacia una gama infinita de accidentes "intercurrentes", es hacer trizas la intención legislativa e ignorar nuestra realidad.

Nótese que el concepto "accidente intercurrente" se halla acogido en el Art. 3 de la Ley (11 L.P.R.A. sec. 3) bajo el

---

[3] El recurrido declaró ante la Comisión que recibe el beneficio de otro programa social: cupones de alimentos.

epígrafe "Incapacidades Preexistentes" con un lenguaje que lo enlaza al curso del empleo y al diseño integral de la Ley y ha crecido, no por disposición legislativa, sino por ampliación liberal en la jurisprudencia de lo que es "curso del empleo". *Cotto Valdés* v. *Comisión Industrial*, 105 D.P.R. 409 (1976). Así lo había sostenido este Tribunal hasta ahora al resolver: "Cuando la lesión posterior a una lesión inicial compensable surge de una actividad en el 'quasi curso' del empleo, como es el caso de la lesión sufrida con motivo de una caída en el curso de una visita al médico para tratamiento de la lesión inicial, esta segunda lesión es compensable por considerarse que surge 'en el curso del empleo' o que tiene una relación causal con el accidente original." *Admor., F.S.E.* v. *Comisión Industrial*, 100 D.P.R. 363, 366 (1972).

Por no haber ocurrido el segundo accidente ni en el curso ni en el "quasi curso" del empleo, no es accidente intercurrente compensable. Mi respeto y simpatía humana por los obreros que sufren lesiones o se inutilizan, o que pierden la vida por accidentes del trabajo (Art. 2 de la Ley) no me permiten dar paso a aspiraciones de terceras personas en erosión de este remedio social que en Puerto Rico todavía no alcanza a compensar a plenitud los trabajadores víctimas de accidentes primarios y a su familia.

Concurrimos sólo en el resultado de revocación de la resolución revisada porque la sentencia ha debido ajustarse al principio aquí enunciado, prescindiendo del aspecto casuístico que la ciñe al valor de la prueba presentada.