EDNA OLSON v. F. I. CRANE LUMBER COMPANY
AND ANOTHER.

107 N. W. (2d) 223.

December 30, 1960—No. 37,940.

*Tyrrell, Jardine, Logan & O'Brien* and *Raymond W. Fitch,* for relators.

*Richard H. Plunkett* and *Stephen C. Samels,* for respondent.

MAGNEY, COMMISSIONER.

Certiorari to review an order of the Industrial Commission awarding death benefits to dependents of a deceased employee.

On July 29, 1955, Thomas Olson, age 55 years, was an employee of F. I. Crane Lumber Company of Austin, Minnesota. On that day he was engaged in unloading dimension lumber, 2 x 4 and wider, from a freight car and piling the same in an adjoining warehouse. The weather was hot and humid. At about 3:30 in the afternoon Olson complained of the heat and of pains in his chest. Dr. B. J. Cronwell, who was called to employee's home at about 5:30, found Olson in shock, with lowered blood pressure and fast pulse and complaining of severe pain substernally. At the hospital Dr. Cronwell diagnosed the case as an anterior septal myocardial infarction, popularly known as a coronary. Olson remained in the hospital until August 29, 1955. The prognosis then was poor. He was told that he would be unable to work for about 6 months. Dr. Cronwell had first attended Olson on November 4, 1953. At that time there was evidence of some type of coronary disease, and nitroglycerin was prescribed. In Dr. Cronwell's words: "In '53 he probably only had an insufficiency, if anything." This was due to some interference in the normal blood supply according to the doctor. He saw Olson several times in 1953 and 1954. The last time he saw him prior to July 29, 1955, was in May 1954. At that time Olson told him that he was feeling the best he had felt in years.

While Olson was in the hospital after the attack on July 29, 1955, he "had his anxiety," according to Dr. Cronwell. It started a few weeks

after the occlusion. The first signs of mental depression were in January 1956. On February 20, 1956, Dr. Cronwell made his first notation on Olson's mental condition, stating that Olson was "mentally pessimistic." His mental illness increased, and on May 1, 1956, he was committed to the Rochester State Hospital. He was then severely disoriented. He imagined that people were after him to do him harm, especially his brother Benny; also that the devil was trying to get him. Except for a short period of discharge and for some visits to his home, he remained in the hospital at Rochester until August 1, 1957, when he committed suicide by strangulation.

The Industrial Commission found that on July 29, 1955, Olson suffered personal injury, aggravating a preexisting heart condition, which injury arose out of and in the course of his employment. It also found that Olson's suicide resulted from the mental illness, which in turn was caused by his personal injury of July 29, 1955. These findings are questioned by employer and its insurer and are brought here for review.

■ Our first inquiry must be directed to the finding of the commission that Olson suffered a personal injury on July 29, 1955, which was compensable under the terms of the Workmen's Compensation Act.

Dr. Cronwell, the attending physician, was of the opinion that the nature of the physical labor performed by Olson while subjected to excessive heat and humidity "would necessarily pull down his blood pressure enough to let him occlude." In other words, the relationship between his labor, under the circumstances of excessive heat and humidity, and the coronary which occurred was that of cause and effect. Employer and insurer do not seriously question the finding that the coronary resulted from the nature of the work and the surrounding circumstances of excessive heat and humidity, and the testimony of Dr. Cronwell is clearly sufficient to sustain the commission in its finding.

Employer and insurer, however, do seriously question the finding of the commission that the mental illness and suicide were caused by the coronary of July 29, 1955. They contend that there is insufficient evidence to sustain that finding.

Olson was described as being a good worker, always jovial or jolly. During the time that Dr. Cronwell treated Olson between November

1953 and May 1954, when he last saw him prior to his accident, the doctor was not aware of any personality changes and saw no evidence of mental illness or depression. In his opinion, Olson was an "average oriented individual." While Olson was still in the hospital after his coronary of July 29, 1955, he had "his anxiety," as noted, and mental depression appeared in January 1956. On February 20, 1956, he was mentally pessimistic, and on May 1, 1956, being then severely disoriented, he was committed to the state hospital. The question then is whether this mental illness was merely coincidental, following the coronary, or whether it was in fact caused by it.

Dr. Cronwell testified that in his opinion the mental illness was causally related to the coronary of July 29, 1955; that the state of shock would cause a cerebral ischemia; and that, lasting as long as it did, could cause damage to the cerebral cortex of the brain because of insufficiency of oxygen. The autopsy report makes no reference to a finding of ischemia and there is no intimation that such a condition was looked for. There is nothing in the record describing the brain damage known as ischemia. But whether ischemia actually resulted from the coronary may not be so important. Dr. Magnus Petersen, superintendent of the Rochester State Hospital, stated in a letter introduced in evidence that, in his opinion, even if no organic brain syndrome resulted from the heart attack, the ultimate psychotic reaction could be readily explained on the basis of Olson's psychological reaction to the heart attack. Dr. Petersen stated that constant worry and preoccupation with one's physical health in an elderly man who has suffered a heart attack, and who is afraid that he has become permanently handicapped, is a common response and often leads to psychological decompensation and abnormal mental symptoms.

Dr. Conrad W. Baars, a psychiatrist at the Rochester State Hospital who saw Olson professionally, testified that in his opinion there was a causal relationship between the heart attack on July 29, 1955, and the subsequent onset of the mental illness and, further, that there was a causal relationship between death by suicide and the mental illness. Both Dr. Cronwell and Dr. Baars stated that patients become quite depressed following a coronary. Dr. Cronwell stated that it was fairly common, and Dr. Baars said that some do.

Employer and insurer presented Dr. Philip K. Arzt and Dr. Gordon R. Kamman, psychiatrists. Both were of the opinion that Olson's psychiatric depression was entirely unrelated to his heat exhaustion and heart attack and that it was an independent occurrence.

On this conflict of opinions of medical experts, the commission found that Olson's suicide was caused by the mental illness and that the mental illness was caused by the personal injury of July 29, 1955. The record supports the findings, and this reviewing court is bound by such findings.

Anderson v. Armour & Co. 257 Minn. 281, 101 N. W. (2d) 435, has features similar to some in the instant case. Anderson, the employee, while operating his employer's truck in the employer's business, ran into a pedestrian on a public highway, seriously injuring him. This incident so preyed on his mind that he became mentally unbalanced, suffering from psychotic depression. As a result of such depression he took his own life. We held that on the conflicting opinions of the expert witnesses the Industrial Commission was justified in finding that there was a causal connection between the accident and the suicide, and the death by suicide was held compensable. It would seem that a severe coronary attack could prey on a victim's mind, causing mental illness, even more so than a highway accident.

■ Employer and insurer contend that a hypothetical question submitted to Dr. Baars, asking his opinion as to whether there was a causal connection between Olson's mental illness or suicide and the heart attack, called for pure speculation since other depressing incidents existed in Olson's life. The facts contained in the question were practically all the facts in evidence at the time the question was asked, and no further facts were suggested in the objection. The question was correct as far as it went, and we cannot see how the commission could have been misled by the answer.

The commission, on the record, could reasonably have reached the conclusion which it did.

Petitioner is allowed $250 attorneys' fees in this court.

Affirmed.