FRED DAY v. ZENITH PAPER STOCK AND RAG COMPANY
AND ANOTHER.

134 N. W. (2d) 4.·

March 12, 1965—No. 39,447.

*Reavill, Neimeyer, Johnson & Killen* and *John J. Killen, Jr.,* for relators.

*Paul J. Louisell,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Certiorari to review a decision of the Industrial Commission wherein it granted additional compensation to Fred Day for permanent total disability and additional medical expenses for the aggravation of an injury sustained in an industrial accident which occurred on July 12, 1955, while the employee was in the employ of Zenith Paper Stock and Rag Company, which aggravation was due to a subsequent nonindustrial back injury sustained by the employee on March 14, 1959.

On appeal relators, the employer and its insurer, contend that employee's subsequent back injury was not a consequence of his original accident; and further that the evidence failed to establish that the employee was permanently totally disabled within the meaning of Minn. St. 176.101, subd. 5.[1]

In his findings the referee determined:

"That as a result of said personal injury of July 12, 1955, the employe is permanently totally disabled.

"That the employe may be in need of further medical care and treatment to cure and relieve from the effects of said personal injury of July 12, 1955."

On appeal the commission found:

"That on or about March 14, 1959, the employe, while not employed, fell and injured his back, and that said injury occurred as a result of his inability to maintain proper balance because of his wearing an artificial arm on an arm stump with restricted motion.

"That the need of an artificial arm and the restriction of the arm stump motion were caused by the employe's personal injury of July 12, 1955."

In its opinion the commission set forth the following:

"* * * The evidence shows that the employe was 59 years of age at the time of trial. The employe had a seventh grade education, having quit school in the last month or so of the eighth grade. He then

---

[1] Minn. St. 176.101, subd. 5, provides: "* * * any * * * injury which totally incapacitates the employee from working at an occupation which brings him an income constitutes total disability."

took 600 hours of Vocational School training in boat building. * * * And although the employe has worked at jobs all his life, he cannot be termed other than an 'odd-lot' worker.

"On July 12, 1955, the employe had the misfortune of suffering a traumatic amputation of a portion of the right hand. Surgery resulted in the amputation of the forearm slightly below the elbow joint. The employe was further left with a well-healed, but tender stump, and inability to abduct his right shoulder beyond 90°. * * * although he was fitted with an artificial arm (and given no training in its use), it has never satisfactorily fit him, nor has he been able to satisfactorily use it. Since the time of his injury, he has had no history of employment using the one hand. He has picked a few berries for himself. * * * he has a history of considerable intoxication and has had the misfortune to be arrested, according to his testimony, when even standing near bars.

"On March 14, 1959, the employe suffered an injury to his back. He was not on any job at the time, but was at the home of a friend in Superior, Wisconsin, and playing with a dog. He threw a stick and then the employe 'Made off like I was running going behind away from him, * * * and I just slipped and fell on my back on account of I wasn't balanced * * *. I was out on my feet, it was kind of a little ice or something.' He further testified: 'I landed on this side and I swung this arm up to keep from jarring it * * *.' * * *The employe also testified: 'Well, when I fell, I didn't have no balance on account of this arm.' His lack of control or balance due to inability to properly use and swing his right arm was also attested to by Dr. Spang. As a result of the fall, the employe incurred medical expense and suffered a 15 percent permanent partial disability to his back.

\* \* \* \* \*

"* * * We think * * * that in view of the employe's description of the circumstances causing his falling and of Dr. Spang's testimony in regard to lack of balance, that the employe's injury to his back arose from his original injury and is compensable as a 'consequential' injury.

"* * * We believe that permanent total disability is impaled by the

thrust of the evidence. We hold that to be true with or without considering the back injury. Although the employe had no impressive performance in the labor market showing any continuity of stable employment, and although he apparently had personal failings that inhibited him from steady daily employment, nevertheless he had the ability to work at 'odd-lot' employment and earn his keep, and was doing so at the time of his injury. Dr. Spang, the only medical witness, testified he could not do any work. * * * The employe's lack of employability is also borne out by the testimony of the employment expert.

\* \* \* \* \*

"We award compensation for permanent total disability and award the employe his medical expense for his back injury."

The evidence disclosed that on August 17, 1956, the employee had been referred to the Duluth office of the State Division of Vocational Rehabilitation where a physical examination had been authorized for which the employee never reported; that this division had made numerous attempts to get in touch with the employee over a 2-year period without success; and that since his injury of July 12, 1955, he had not attempted work of any kind except for hoeing on his brother's farm for 5 or 10 minutes at a time and picking berries for himself.

On November 24, 1961, the employee filed a petition with the Industrial Commission, claiming permanent total disability subsequent to September 27, 1961, because of the injury of July 12, 1955, which led to the loss of his right forearm. In this petition no claim was made for disability based upon the employee's back injury. The employee was examined by Dr. Dan R. Goldish who reported to the commission on October 24, 1961, that in his opinion the employee was then employable in so far as employment might be obtainable by a man with only one arm. On December 13, 1961, at the request of employer, the employee was examined by Dr. S. S. Houkom who reported on December 19, 1961, that in his opinion the employee was then not totally and permanently disabled.

On January 12, 1962, employee's claim petition was amended to delete any claim for permanent total disability and to assert a claim

based solely upon the employee's total loss of his right forearm. For such loss he was awarded and has been paid compensation by the relators in accordance with statutory requirements.

On May 16, 1962, the employee filed with the commission a new petition in which he claimed permanent total disability because of the July 12, 1955, accident. In this petition no reference to a back injury and no claim for compensation therefor was made. On November 21, 1962, when the employee appeared for hearing before the commission, this petition was amended to include a claim for a back injury sustained on March 14, 1959. At this hearing Dr. James S. Spang testified that he had examined the employee on September 17, 1962, and expressed the opinion that he was totally disabled for any gainful employment; that his lack of a right forearm would affect his ability to control a fall such as that which occurred on March 14, 1959; that a hernia which affected the employee in itself disqualified him from manual labor; that his back condition and hernia made him unemployable as a plumber's helper, a painter's helper, a carpenter's helper, a pulp cutter, or a fisherman, without reference to his loss of an arm; and that the loss of his right forearm, when considered with his age and educational background, totally disabled him for any gainful employment regardless of his hernia or back injury. He expressed the opinion that the employee's inability to maintain a proper balance at the time of his fall was because of the absence of his right forearm and, accordingly, causally related the subsequent injury to the original injury sustained on July 12, 1955.

Mr. Orville Hage, district supervisor for the State Division of Vocational Rehabilitation, testified that "at his [employee's] age now and with the use that he has * * * with the right arm, I would see very little that he could do as far as benefiting from retraining"; and that he knew of no useful purpose which would be served through an attempt at retraining. Mr. Roy Anderson, manager of the State Employment Service in Duluth, in answer to hypothetical questions testified that with the employment skills possessed by the employee and the loss of his arm the witness knew of no jobs presently available for employee. The witness directed attention to the fact that some 3,000

people, most of whom were able-bodied, were looking for jobs in the Duluth area where the employee resided.

With respect to the employee's back injury, the evidence established that as a result of his fall he had sustained a compression fracture of his first lumbar vertebra as well as other disabilities. Employee's testimony was that "I just slipped and fell on my back on account I wasn't balanced"; and that "I done the best I could; I landed on this side, and I swung this arm up to keep from jarring it, and if I had this arm, I wouldn't have had that crack to the back."

1. The sole question for determination is whether the evidence as above outlined was adequate to support the commission's finding that the employee was permanently totally disabled as a result of the July 12, 1955, accident. The record discloses substantial testimony which would support this finding. There is the testimony of Dr. Spang to the effect that when he examined employee on September 17, 1962, in his opinion the employee was then totally and permanently disabled for any gainful employment; that this was causally related to the industrial accident of July 12, 1955; and that the employee would have been so disabled regardless of the accident of March 14, 1959, and regardless of other disabilities with which the employee was afflicted at the time of his examination.

The only medical evidence submitted in opposition to the foregoing were the reports of Dr. Goldish and Dr. Houkom above referred to. Both of these had reference to physical examinations of the employee made in the latter part of 1961, approximately a year prior to Dr. Spang's examination. Each of these doctors expressed his opinion that the employee was not permanently totally disabled at that time. The commission, of course, was entitled to give credence to the testimony submitted by Dr. Spang as against such reports which related to employee's condition approximately a year before the hearing. Olson v. F. I. Crane Lbr. Co. 259 Minn. 248, 107 N. W. (2d) 223; Anderson v. City of Minneapolis, 258 Minn. 221, 103 N. W. (2d) 397; Schoch v. Minnesota Min. & Mfg. Co. 247 Minn. 288, 76 N. W. (2d) 801; Schmillen v. Dave Schroeder Grocery, 250 Minn. 561, 85 N. W. (2d) 740.

2. In addition to the testimony of Dr. Spang, the employee submitted that of Mr. Orville Hage, district supervisor for the State Division of Vocational Rehabilitation, to the effect that when consideration was given to the employee's age, education, and training in conjunction with the loss of his right forearm, little benefit would be gained for him by a retraining program, and that he knew of no useful purpose which would be served thereby. He was asked:

"Q. If we were to disregard his back injury and also his rupture and his shortness of breath, would your recommendation against retraining still stand?

"A. Well, this is difficult to say, but probably at his age now and with the use that he has to do with the right arm, I would see very little that he could do as far as benefiting from retraining."

3. On a number of occasions we have expressed the rule governing total permanent disability. Thus, in Lee v. Minneapolis St. Ry. Co. 230 Minn. 315, 319, 41 N. W. (2d) 433, 436, it was stated:

"* * * [W]e have held that, although an injured person may be able to perform some parts of his occupation, he may be held to be totally disabled if he is unable to perform the substantial and material parts of some gainful work or occupation with reasonable continuity. * * * This rule can only mean that the injured employe must be in such condition that prospective employers will normally and reasonably be willing to hire him despite his handicaps. If reasonably stable employment is not available for an employe by reason of certain injuries which have crippled him physically or neurologically, evidence of that fact—through the testimony of an experienced employment supervisor—is both material and relevant in determining whether the employe's disability is of such a character that he has no reasonable likelihood, *while such disability continues,* of being able to obtain and pursue an income-yielding occupation with reasonable continuity * * *."

See, also, Berg v. Sadler, 235 Minn. 214, 50 N. W. (2d) 266; Green v. Schmahl, 202 Minn. 254, 278 N. W. 157; Olson v. Griffin Wheel Co. 218 Minn. 48, 15 N. W. (2d) 511, 156 A. L. R. 1338; Lorentz v. Aetna Life Ins. Co. 197 Minn. 205, 266 N. W. 699.

From the foregoing it follows that since there was evidence to sustain the commission's finding that the employee was permanently totally disabled, we have no choice but to affirm its decision, particularly where no substantial medical testimony was submitted which would require a contrary finding. Peterson v. The Ruberoid Co. 261 Minn. 497, 113 N. W. (2d) 85; Olson v. F. I. Crane Lbr. Co. 259 Minn. 248, 107 N. W. (2d) 223.

Respondent is allowed $250 attorney's fees in this court.

Affirmed.