This is a workmen's compensation case.
Plaintiff, Chester Simmons (hereinafter Simmons), filed a complaint against defendant, Champion International Corporation (hereinafter Champion) to recover workmen's compensation benefits as a result of a job-related injury incurred when the truck he was operating for his employer was involved in an accident. After a hearing the trial court awarded claimant benefits for temporary total disability to the time of trial and for two hundred nineteen weeks into the future. The trial court also required Champion to furnish all necessary and reasonable medical and hospital expenses as provided by the Alabama Workmen's Compensation Act, including accrued expenses and future expenses. Champion moved the court to vacate the judgment or, in the alternative, grant it a new trial. Champion supported the motion with affidavits. A hearing was held by the court, at which time testimony was taken. The court denied the motion. Champion appeals from the judgment on the merits and the denial of the motion for new trial.
The evidence reveals the following pertinent facts: On December 8, 1978 Chester Simmons, a fifty-one year old man with a fifth grade education, was driving a truck for his employer, Champion, when it overturned, causing injury to his head and back.
Simmons was taken to the Huntsville Hospital where he was placed under the care of Dr. Triplett. On February 14, 1979 Dr. Triplett released Simmons from the hospital and also said that he could return to work on February 19, 1979. Simmons testified, however, that he told Triplett that he (Simmons) was still suffering from dizziness.
About the time Dr. Triplett released Simmons for work, Champion terminated Simmons' job. Simmons did not work anywhere during the rest of 1979 and up until about March 24, 1980, when he was given a job by Champion riding a tree planter. Simmons worked four days and stopped because it hurt his back and neck.
During the period between the accident and the date of trial, Simmons consulted several doctors besides Dr. Triplett for dizziness and back and neck pain which he testified was the result of the accident on December 8, 1978. Simmons said at trial he was still suffering pain and dizziness and that this prevented him from working.
Several doctors who examined Simmons released him for work. Some of the doctors said Simmons could do only light work, although Dr. Triplett said he could return to truck driving.
One of Simmons' doctors, Dr. Jacobs, said that Simmons could do some work, yet he emphasized that Simmons could not drive a truck or do any work requiring bending, stooping, or twisting. He said this sort of activity could bring on a dizzy spell and cause Simmons to become unbalanced and possibly fall. Dr. Jacobs further testified that he had no idea how long the dizziness that Simmons was experiencing would continue. He said it is possible Simmons will recover from the dizziness but he has no idea when this will occur.
After the trial court rendered its decision on June 27, 1980 awarding him temporary total benefits, Simmons again sought work at Champion. He was employed by Champion and the first day was given a job burning brush. The next two days he was told to service trucks. He stopped working after the third day because his back hurt. *Page 307 
Simmons said he wanted to work and tried to work but that the jobs he had been given by Champion, other than burning brush and marking trees, hurt his back.
Mr. Simmons has no formal training and no particular skills other than truck driving and manual labor. He says he cannot drive a truck or do manual labor requiring bending, stooping, twisting, or lifting heavy objects. He says he still suffers from dizziness and has pain in his back for which he is presently taking medication.
Champion's first issue here is that there is no legal evidence to support the trial court's award of temporary total benefits to the date of trial and two hundred nineteen weeks in the future. We disagree.
As we have often stated, the standard of review in workmen's compensation cases is whether there is any legal evidence to support the trial court's findings of fact. Moses v. PitneyBowes, Inc., Ala.Civ.App., 368 So.2d 543, writ quashed, Ala.,368 So.2d 545 (1979). We will not weigh the evidence, but we will look to see if there is any legal evidence to support the findings. And, if there is legal evidence, or a reasonable inference therefrom, to support the fact findings, those findings will not be disturbed on appeal. Defense OrdinanceCorp. v. England, 52 Ala. App. 565, 295 So.2d 419 (1974).
There is evidence in the record from which it could be found that Simmons was temporarily and totally disabled from the time of the accident to the date of the judgment. Simmons testified that he could not work because of the pain in his neck, back and head, and also because of having dizzy spells that caused him to act like a drunk person.
The doctors who examined and treated Simmons were in disagreement about his condition and as to the kind of work he could do. Some of the doctors opined that Simmons could return to driving a truck, while others said he could do only light duty work.
In view of this evidence, we cannot say that the trial court's finding that Simmons was temporarily totally disabled prior to trial is unsupported by the evidence.
Champion also says that the trial court erred in awarding Simmons temporary total benefits for two hundred nineteen weeks into the future.
In Albertville Nursing Home v. Upton, Ala.Civ.App.,383 So.2d 544 (1980), we said:
 In a case involving temporary total disability where the claimant is totally disabled at the time of trial, it becomes the duty of the court to make some estimate from the evidence as to its probable duration and fix the compensation to be payable until such estimated time, not exceeding the maximum. Ford v. Crystal Co., 238 Ala. 187, 189 So. 730 (1939).
Having determined that temporary total benefits can be awarded to a claimant in a workmen's compensation case beyond the date of trial but not to exceed the maximum number of weeks allowed under the workmen's compensation law, the only question left to be decided in the case at bar is whether the evidence supports such a finding. We hold that it does.
Simmons testified at trial that he was still suffering from dizzy spells and that his back hurt him, for which he was taking medication and wearing a neck brace. Dr. Jacobs stated that he had no idea how long Simmons would experience dizzy spells; he said it is possible that Simmons would recover but that he did not know when.
Based on this evidence we cannot say that the trial court's finding that Simmons should receive temporary total benefits in the future is erroneous.
Champion says next that the trial court committed error in its findings of fact by not specifying those medical expenses incurred by Simmons that were due to be paid by Champion.
In its findings of fact the trial court said:
 (8) That the defendant is obligated to provide medical benefits unto the plaintiff as provided by the Workmans Compensation Act of the State of Alabama.
. . . . *Page 308 
 C. That the defendant shall furnish all necessary and reasonable medical, hospital, etc., expenses, as provided by the Workmans Compensation Act of Alabama, including accrued expenses and further expenses.
Champion argues that this finding of fact by the trial court does not specify what medical expenses it is required to pay, and points out that Simmons admitted not having Champion's approval to seek medical services from Drs. Jacobs, Hall and Beddow, nor did he have approval to be admitted to Decatur General Hospital.
Simmons replies that no issue was made at trial as to the necessity for or value of any medical expense incurred by him and, furthermore, that all medical expenses had been paid by Champion's workmen's compensation insurer.
Champion says that neither it nor its insurer has paid any medical bills for Simmons since February 1979.
Section 25-5-77 (a), Code of Alabama 1975 provides in pertinent part as follows:
 [T]he employer shall pay the actual cost of reasonably necessary medical and surgical treatment and attention, physical rehabilitation, medicine, medical and surgical supplies, crutches, original artificial members and other apparatus as may be obtained by the injured employee. . . . If the employee is dissatisfied with the initial treating physician selected by the employer and if further treatment is required, the employee may so advise the employer, and in such event the employee shall be referred to a second physician selected by the employer. If the employee is dissatisfied with the second physician selected by the employer, the employee may so advise the employer; and, in such event the employee shall be referred to a third physician selected by the employer. . . . The total liability of the employer shall be limited to such charges as prevail for similar treatment in the community where the injured employee resides. . . . All cases of dispute as to the necessity and value of such services shall be determined by the tribunal having jurisdiction of the claim of the injured employee for compensation.
The above cited Code section requires the employer to pay the actual cost of reasonably necessary medical expenses incurred by the employee, and it sets out the procedure for selecting the treating physicians. The Code section then provides that if a dispute arises as to the necessity or value of such services, the court having jurisdiction of the compensation claim shall resolve the dispute.
In the instant case the value of or necessity for the medical services was apparently not in dispute. Simmons offered into evidence without objection the hospital records of several hospitals where he had been treated, but no point was made about the value or necessity of the services, and there is no other evidence in the record relating to the value of medical expenses. Possibly the reason why no issue was raised as to the medical expenses is that, as Simmons said in brief, the medical expenses had been paid and he saw no point in raising that as an issue.
Champion replies that no medical expenses have been paid on Simmons' behalf since February 1979. Yet Simmons testified that he took his medical bills to Cornett, an employee of Champion, and Cornett helped him fill out the forms to send to the insurer for payment. He also said that Dr. Beddow endorsed a check over to him from the insurer.
Since Simmons has not questioned the payment of medical expenses and Champion says it has not paid any medical bills on Simmons' behalf since February 1979, we perceive no fault in the trial court's finding that Champion is to pay only those medical expenses for Simmons which it is required to pay by §25-5-77 (a).
Should a dispute arise in the future over the failure of Champion to pay medical expenses that may be due Simmons, such dispute can be resolved by the court that awarded compensation benefits to Simmons. *Page 309 
In the circumstances presented by this case, we find no error in the trial court's finding as to medical expenses requiring reversal.
Finally, Champion argues that the trial court erred in overruling its motion to vacate the final judgment, or, in the alternative, its motion for new trial. We find no error here.
In support of its motion, Champion argued before the trial court and here that the trial court's judgment was not supported by the evidence, that newly discovered evidence warranted a new trial, and that Simmons had committed a fraud on the court and, therefore, the judgment should be vacated.
Champion's motion was supported by three affidavits, one made by Dr. Chenault who examined Simmons after the trial on the merits, one by an employee of Champion who talked to Simmons after the final judgment was rendered, and one by the attorney for Champion. Champion also introduced the deposition of Dr. Beddow, who gave Simmons a work-release slip for light duty after the judgment on the merits.
At the hearing on the new trial motion, Simmons and his wife took the stand and testified in opposition thereto. After the evidentiary hearing the trial court overruled the motion.
A ruling on a motion for new trial is within the sound discretion of the trial court and should not be disturbed on appeal unless some legal right was abused and the record plainly and palpably shows that the trial court was in error.Trans-South-Rent-A-Car, Inc. v. Wein, Ala., 378 So.2d 725
(1979); Gilmer v. Salter, 285 Ala. 671, 235 So.2d 813 (1970).
As previously noted, Champion introduced in support of its motion for new trial three affidavits and a deposition and Simmons introduced his testimony and that of his wife in opposition to the motion.
Through its evidence Champion attempted to show that the evidence submitted at the trial in chief did not support an award of temporary total benefits for the maximum period allowed by the act; that the evidence submitted at the motion for new trial, i.e. newly discovered evidence, showed that Simmons went to Dr. Beddow after the judgment on the merits and sought a work-release slip so that he could return to work at Champion and that this evidence shows a fraud committed on the court by Simmons because he went to Dr. Beddow for a work-release slip shortly after the judgment awarding him temporary total benefits.
Simmons testified that his dizziness and back problems resulted from the truck wreck and that he still suffers from these problems.
Simmons said he had not worked since the wreck except the four days he worked for Champion shortly before the trial, and he had not received any money from workmen's compensation since February 1979. Simmons said he needed to work to earn money to pay his living expenses. He said he thought he could do some type of work such as burning brush or marking trees. He went to his union representative and asked for work at Champion. Simmons was told that if he got a light duty slip from a doctor he could return to work. Simmons went to see Dr. Beddow and asked for a light duty slip. He was given one and he reported to Cornett at Champion. Simmons worked three days and stopped because of dizzy spells and back problems. Simmons said he wanted to work and needed to work but that he could not do some of the jobs that he had been given to do at Champion.
Based on this evidence we do not believe that the trial court committed plain and palpable error by overruling Champion's motion for new trial. No error here.
For the reasons above set out, the judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur. *Page 310