This is a workmen's compensation case.
The claimant appeals from the trial court's denial of further medical benefits for an off-the-job injury to a knee. The claimant had received workmen's compensation and medical benefits for a prior, compensable injury to the knee.
In May 1982, the claimant sustained an injury to his left knee when the riding lawn mower that he was operating overturned. The injury occurred in the course of his employment, and proper notice was provided to his employer.
Immediately after suffering the knee injury, the claimant began undergoing treatment by Dr. Marcus Whitman, an orthopedic surgeon approved by the claimant's employer. Surgery was performed twice on the injured knee, and the claimant attempted rehabilitation while making regular visits to Dr. Whitman's office.
After an unsuccessful attempt by the claimant to return to work, the employer and the claimant filed a joint petition for a lump sum settlement of compensation. The petition was approved by the trial court on July 7, 1983. A provision of the agreement provided that the employer would continue to furnish medical and surgical benefits "if any be necessary and to *Page 1126 
the extent and in the manner required by [The Workmen's Compensation] Act."
In August 1983, while still under Dr. Whitman's care for his original knee injury, and while vacationing in Florida, the claimant suffered a fall that caused further severe injuries to his left knee. Claimant returned to Dr. Whitman for regular office visits and underwent arthroscopic surgery on the knee in October 1983. After the surgery, claimant had to be rehospitalized for treatment of an infection in his left knee. He remained in the hospital for two weeks.
The employer refused to pay medical expenses for the second knee injury. The claimant asked the trial court to vacate the earlier settlement, and made a claim for medical expenses arising out of the subsequent injury.
A trial was held in November 1984. The only medical testimony presented was that of Dr. Whitman. Dr. Whitman testified that the second knee injury was caused by the weakness of the muscles and residual instability of the knee following the original injury. Dr. Whitman's medical report of December 2, 1983, following up on a September 28, 1983 report, is unequivocal, and reads as follows:
 "There is no doubt in my mind that it [claimant's subsequent injury] is related to his original problem. Certainly with the type injury this patient had of his knee, it would make him subject to reinjury at any time, and the twisting injury he sustained while on the beach was due to instability in the knee. After all he had had two procedures on his knee prior to this injury, and this would make him more susceptible to injury than the normal person."
After considering all of the testimony, the trial court made the following findings of fact:
 "1. Plaintiff injured his left knee on May 15, 1982, and received compensation and medical payments for this injury.
 "2. On or about August 25, 1983, while vacationing at Ft. Walton Beach, Florida, the plaintiff fell and the left knee was again injured.
 "3. The condition of plaintiff's left knee on or about August 25, 1983, immediately prior to the fall was a contributing factor in the plaintiff's fall.
 "4. The injury to the left knee of the plaintiff on or about August 25, 1983, was a new injury.
 "WHEREFORE, it is the judgment of the court that the plaintiff's claim for medical benefits relating to the knee injury incurred on or about August 25, 1983, is due to be and is hereby denied."
This case has been before this court once before. See Erwinv. Harris, 459 So.2d 928 (Ala.Civ.App. 1984). In our earlier opinion we did not discuss claimant's medical benefits claim, but instead reviewed and affirmed the trial court's decision to refuse to vacate the earlier settlement. We declined to discuss the medical benefits claims for the subsequent knee injuries because that "aspect was factually disputed, was at issue and was set for trial." Erwin, supra. The only issue raised on this appeal is whether the trial court erred when it denied medical benefits to the claimant for his subsequent injury to the knee for which he had suffered an earlier compensable injury. The claimant contends that, in light of the trial court's own findings of fact, the denial of medical benefits is a misapplication of the law.
We note at the outset that the workmen's compensation laws are remedial in nature and are to be liberally construed and applied in order to effect their beneficent purposes. OrkinExterminating Co. v. Williams, 389 So.2d 935 (Ala.Civ.App. 1980). An employee who is covered under the Act is entitled to be fully compensated for his job-related injury, and provisions of the law should be liberally construed to accomplish such a result. Haggard v. Uniroyal, Inc., 423 So.2d 865 (Ala.Civ.App. 1982). All reasonable doubts regarding a provision of the Workmen's Compensation Act should be resolved in favor of the employee. American Tennis Courts, Inc. *Page 1127 v. Hinton, 378 So.2d 235 (Ala.Civ.App.), cert. denied,378 So.2d 239 (Ala. 1979).
Section 25-5-77 (a), Code of Alabama 1975, requires an employer of a claimant who has an injury that is compensable under the Act to pay the actual cost of reasonably necessary medical expenses incurred by the employee. ChampionInternational Corporation v. Simmons, 398 So.2d 305
(Ala.Civ.App. 1981). Any interpretation of the parties' settlement agreement whereby the employer agreed to furnish medical and surgical benefits "to the extent . . . required by [the Workmen's Compensation] Act" must fall within the confines of this section.
It is well established that, under general workmen's compensation law, an injury which occurs subsequent to an original, compensable injury is itself compensable if it is the direct and natural result of the original, compensable injury. 1 A. Larson, The Law of Workmen's Compensation, §§ 13.10, 13.11, 13.12 (2d ed. 1985). This rule applies regardless of whether the subsequent injury is an aggravation of the initial compensable injury or a new and distinct injury. Larson, supra.
Therefore, if an injury occurs as the direct and natural result of the original, compensable injury, it is a reasonable conclusion that any medical expenses incurred by the employee for the subsequent injury are those that the employer is required to pay as "reasonably necessary" under § 25-5-77 (a). Accordingly, the dispositive issue here is one of causation of the claimant's second knee injury, as there is no dispute that he suffered a prior, compensable injury to his left knee.
The burden is upon the claimant to establish the causal connection between the initial, compensable injury and the subsequent injury for which benefits are sought. Houston v.Louisiana Land Exploration Company, 459 So.2d 912 (Ala.Civ.App. 1984). In Houston there was evidence to support the trial court's conclusion that the causal connection between Houston's prior, compensable knee injury and subsequent back injury was missing. However, there are a number of cases in other jurisdictions which have found the necessary causal connection where the initial compensable injury resulted in a fall causing additional injuries. See Larson, supra, and cases cited therein.
A Minnesota case which supports this principle is Day v.Zenith Paper Stock and Rug Company, 270 Minn. 420, 134 N.W.2d 4
(1965). In Day the claimant suffered an initial compensable injury which necessitated the amputation of his right forearm. Later, he slipped on ice, fell and injured his back allegedly due to his inability to maintain proper balance because of his weakened member (missing forearm). There the Minnesota Industrial Commission awarded benefits for the subsequent back injury, holding that it was a natural consequence of his original injury. Day, supra. Minnesota's construction of its workmen's compensation law is extremely persuasive because Alabama's Workmen's Compensation Act is patterned after Minnesota's. Pow v. Southern. Construction Co., 235 Ala. 580,180 So. 288 (1938).
In the case of Carabetta v. Industrial Commission,12 Ariz. App. 239, 469 P.2d 473 (1970), it was said concerning a second injury to a knee, "[I]t is well established that where a weakened member such as a leg contributes to a later fall or injury, such later fall or injury is a compensable consequence of the prior industrial injury." From our examination of the record in this case, we conclude that the present case is factually similar to Day and Carabetta. Here, the claimant suffered a prior, compensable injury which resulted in a weakened left knee. He was still undergoing treatment at the time of his second injury. According to the testimony, when he began to fall while at the beach, he tried to stabilize himself with his left leg, which gave way because of its weakened condition from the prior injury, resulting in further severe injuries to the claimant's left knee. Extensive surgery was necessary. The claimant's doctor has testified that if theoriginal knee injury had never occurred, the subsequent knee injury would not have *Page 1128 
occurred. As the Minnesota court said in Day, it is not the situs of the second injury (i.e., either the place where the accident occurred or the physical location of the injury) that is controlling, but rather whether the subsequent injury was a natural consequence of a prior compensable injury.
We are aware and reiterate that the scope of review in a workmen's compensation case is limited to a determination of whether there was any legal evidence to support the trial court's finding and whether the correct law was applied to those facts. Wimbs v. El Biscuit Village, Inc., 418 So.2d 129
(Ala.Civ.App. 1982). We conclude that the trial court incorrectly applied the law to its own finding of fact, as stated in paragraph (3) of the judgment. We therefore reverse. The case is remanded to the trial court with direction to enter a judgment for the claimant for payment of medical cost of necessary treatment of the left knee due to the second injury.
REVERSED AND REMANDED WITH DIRECTIONS.
BRADLEY and HOLMES, JJ., concur.