On May 29, 1997, Michael B. Correll filed an action against Goodyear Tire and Rubber Company, seeking workers' compensation benefits for an on-the-job injury that occurred on May 31, 1995. After receiving ore tenus evidence, the trial court entered an order finding Correll permanently and totally disabled and awarding benefits accordingly. Goodyear filed a postjudgment motion pursuant to Rule 59, Ala.R.Civ.P. On July 29, 1998, the trial court amended its judgment to correct several mathematical errors. Goodyear appealed.
The Workers' Compensation Act provides that "[i]in reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." Ala. Code 1975, § 25-5-81(e)(2). "Substantial evidence" has been defined as "evidence of such *Page 626 
weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870,871 (Ala. 1989).
At the time of trial, Correll was 44 years old. Correll had graduated from high school and had had one year of college education. He has a diverse work history, including both skilled and semiskilled jobs. Correll has worked as an insurance agent, a truck driver, a purchasing agent, and a freight clerk for a railway. In addition, he has owned and managed a lawn-care business.
Correll began working for Goodyear in April 1994. Although on his application for employment he listed only one surgery, Correll had surgeries on his back in 1977, 1984, and 1988, and surgery on his shoulder in 1991.
On May 31, 1995, Correll was injured when some co-employees, apparently engaging in "horseplay" or a prank, placed a 50-pound bag of soapstone on a conveyor belt. Correll testified that as the soapstone fell off the conveyor belt, it "just grazed my head. It didn't hit me directly." Correll fell backward into his work station and injured his neck and left shoulder in the fall.
Correll reported the incident and his injury to Goodyear. He continued to work until his pain increased. In August 1995, Goodyear referred Correll to Dr. H. Evan Zeiger, Jr. In September 1995, Dr. Zeiger performed surgery on Correll to correct a herniated disc in Correll's cervical spine. In November 1995, Correll underwent surgery on his left shoulder. Dr. Zeiger determined that Correll had reached maximum medical improvement ("MMI") on December 18, 1995. Correll was released to return to work with no restrictions.
Correll returned to work on January 3, 1996. He worked until February 5, 1996. It is disputed whether Correll suffered a second, on-the-job injury in February 1996.
Correll testified at trial that he was not claiming that he was injured during February 1996: "I didn't fill out any accident form. . . . There is no record of me having an accident [in February 1996]." Correll testified that he was in pain while he worked at Goodyear in January 1996. Correll's supervisor testified that Correll did not complain of pain after his return to work. He testified that in early February 1996, Correll refused a work assignment because he said he was afraid it might bother his neck.
Correll returned to Dr. Zeiger in February 1996 complaining of pain in his neck, shoulders, and anterior chest wall. Dr. Zeiger's February 6, 1996, notes reflect that Correll reported that he had returned to work in January 1996 and had done "wonderfully well . . . and [was] having no pain." Correll reported to Zeiger that he had been injured on the previous Thursday, February 1, 1996. Dr. Zeiger noted Correll's complaint as follows:
 "[Correll] was placing some rubber packages overhead on a conveyor belt. Something popped in his neck like a firecracker. This was on the left side, and pain shot down his arm in an excruciating fashion. He was able to finish his shift because some of his friends helped take up the slack. He went home, began to gobble [ibuprofen tablets], took it easy over the weekend. He went back to work yesterday, and discovered that the pain became much worse again and was radiating through the neck, shoulder and down the right arm, like it had been on the left."
Dr. Zeiger diagnosed Correll as having a Chiari malformation and syringomyelia. In his notes dated February 12, 1996, Dr. Zeiger stated, "Mr. Correll was doing fine, without pain, until his on-the-job injury of [February 1, 1996]. Although [a] Chiari malformation and syringomyelia is a congenital condition, it was asymptomatic until [Correll] injured his neck on the job. *Page 627 
Since then, he has had excruciating neck pain, arm pain, and numbness all the way down the arm to the hand." The Chiari malformation and syringomyelia cause pain and numbness by compressing the spinal cord near the brain stem.
Correll underwent surgery to remedy the symptoms caused by the Chiari malformation and the syringomyelia. The surgery alleviated the compression on Correll's spine but the damage already caused by the condition was not reparable. Due to the Chiari malformation and the syringomyelia, Correll suffers from chronic pain in his neck and arms, and he experiences numbness on the left side of his face. He is undergoing treatment for depression related to his chronic pain.
Correll reached MMI from the 1996 surgery on July 9, 1996. Dr. Zeiger assigned Correll a total medical impairment of 41%. Dr. Zeiger testified that the impairment attributable to Correll's September 1995 cervical disc surgery was 11%. Dr. Zeiger testified that the remaining 30% impairment was attributable to the Chiari malformation and the syringomyelia. Dr. Zeiger also testified that all of Correll's chronic pain was related to the syrinx and not to the herniated disc that had been surgically corrected.
On appeal, Goodyear argues that because Correll's May 31, 1995, accident was caused by a co-employee, the accident did not "arise out of and in the course of" Correll's employment. Section25-5-1(9), Ala. Code 1975, provides that the term "injury," for purposes of the Workers' Compensation Act, does not include acts of a co-employee or a third party that are intended to injure the employee. There is no evidence in the record to support the conclusion that a co-employee intended to injure Correll by placing the 50-pound bad of soapstone on the conveyor belt.
Goodyear argues only cursorily that Correll's September 1995 surgery to correct the herniated disc was not related to his May 31, 1995, on-the-job injury. The record, however, does not support this contention. The medical testimony links the May 31, 1995, injury to the herniated disc that was corrected by the September 1995 surgery.
Goodyear also argues that § 25-5-51, Ala. Code 1975, prevents Correll from recovering workers' compensation benefits because he misrepresented his medical history on his employment application with Goodyear. The record indicates that Correll had had cervical disc surgery in 1977 and 1984. Correll injured his back in 1987 and had a third surgery on his back in 1988. Correll also underwent surgery to his shoulder in 1991.
In his application for employment with Goodyear, Correll represented that he had had no previous medical problems or surgeries, except for the removal of a bone spur; Correll claimed to have recovered "completely [with] no complications" from that surgery. On his application for employment, Correll claimed to have no continuing health problems. However, the evidence in the record shows that Correll received medical treatment for his continued complaints of back pain from 1991 until December 1993, a few months before he applied for employment with Goodyear.
Our Supreme Court has held that where an employee misrepresents his physical condition on an employment application, he will be denied workers' compensation benefits if:
 "`(1) The employee . . . knowingly and willfully made a false representation as to his physical condition. (2) The employer . . . relied upon the false representation and this reliance . . . [was] a substantial factor in the hiring. (3) There . . . [was] a causal connection between the false representation and injury.'"
Ex parte Southern Energy Homes, Inc., 603 So.2d 1036, 1040 (Ala. 1992). It is the employer's burden to establish each of those elements. Id. *Page 628 
It does appear that Correll was less than truthful in his application for employment with Goodyear. It also appears that Correll's representations on his employment application were a substantial factor in Goodyear's decision to hire him. However, the conditions that Correll failed to report in his application for employment, which were later considered for the purposes of determining his disability, were related to the lumbar area of his back. The May 31, 1995, injury was to the neck area of Correll's cervical spine. Although Correll had had previous surgeries to his cervical spine, there was no evidence presented to indicate that the September 1995 surgery was to the same area of Correll's cervical spine. The record also contains no evidence tending to indicate that there was a causal connection between Correll's failure to disclose those surgeries and his May 1995 injury. Additionally, there is no evidence in the record that the May 31, 1995, injury at Goodyear was in any way related to Correll's earlier injuries; thus, § 25-5-51, Ala. Code 1975, does not bar Correll from recovering workers' compensation benefits.
Goodyear next argues that Correll did not present substantial evidence that the Chiari malformation and the syringomyelia were related to his May 31, 1995, on-the-job injury. After a careful review of the record, we must agree. Correll presented no evidence that the Chiari malformation and the syringomyelia were a result of, or were aggravated by, his May 31, 1995, on-the-job accident.
Dr. Michael G. Gibson, who began treating Correll in May 1996 for management of chronic pain, testified that he was certain that the Chiari malformation, or malformation of the cerebellum, was not a result of the May 31, 1995, accident. Dr. Gibson testified that a Chiari malformation is a congenital defect and that "[a] syrinx is the complication that occurs as a result of the malformation." A syrinx occurs when an area of the spinal cord fills with fluid, causing pain or numbness. The condition caused by the syrinx is known as syringomyelia. According to Dr. Gibson, a syrinx is induced by trauma in only five percent of cases, and then, "it usually takes a pretty significant force."
Dr. Gibson testified that Correll's 1995 complaints of pain radiating down his arms were related to the herniated disc; that Correll's February 1996 complaints of pain in his anterior chest wall and neck and between his shoulder blades were more consistent with pain from a syrinx. Dr. Gibson testified that if the May 31, 1995, injury had caused the syrinx, Correll would have had symptoms immediately. Dr. Gibson noted that Correll got better and was able to return to work; he also noted that the syrinx was not reflected in the tests performed on Correll before his September 1995 surgery. Based on those factors, Dr. Gibson's opinion was that the Chiari malformation and the syringomyelia were not present after the May 31, 1995, accident and before the September 1995, surgery.
Dr. Zeiger explained that the tests performed in September 1995 were not the "best" for diagnosing a syrinx and that the syrinx was diagnosed after he performed an MRI on Correll in February 1996. However, Dr. Zeiger testified that Correll did not have the symptoms of a syrinx in 1995 and that Correll did well when he returned to work after the September 1995 surgery.
In discussing whether the syrinx and the resulting syringomyelia were trauma-related, the doctors referred to the February 1996 incident reported by Correll to Dr. Zeiger. Dr. Zeiger testified that whether the syrinx could have been caused by that trauma was a "tough question." He stated, "[Correll has] the congenital abnormalities, so that means it is more than likely the syrinx would be due to [the congenital abnormalities]."
 "[F]or an injury to be compensable under the Workers' Compensation Act, the employee must establish both legal and *Page 629 
medical causation. Once legal causation has been established, i.e., once it has been established that an accident arose out of and in the course of employment, medical causation must be established, i.e., that the accident caused the injury for which recovery is sought."
Ex parte Moncrief, 627 So.2d 385, 388 (Ala. 1993) (emphasis added; citation omitted).
We recognize that the trial court may find medical causation without expert testimony. Ex parte Price, 555 So.2d 1060 (Ala. 1989). However, although there may be some question that Correll's condition might be related to the alleged February 1996 incident, there is nothing in the record to link the Chiari malformation and the syringomyelia to Correll's May 31, 1995, injury. Correll sought benefits only for injuries from his May 31, 1995, injury. The medical testimony regarding whether trauma could induce the syrinx focused on whether the "injury" alleged to have occurred in February 1996 could have caused the syrinx.
We also note that although an injury occurs subsequent to an original, compensable injury, that later injury is compensable only if the plaintiff can show that it is a direct and natural result of the original injury. Erwin v. Harris, 474 So.2d 1125
(Ala.Civ.App. 1985). There is no evidence in the record to establish that the February 1996 incident Correll reported to Dr. Zeiger was a result of the May 31, 1995, injury. We conclude that there is simply no evidence in the record to tie Correll's Chiari malformation and the syringomyelia to the May 31, 1995, on-the-job injury for which he sought benefits. We recognize the difficulty the trial court experiences when faced with an employee who is obviously in pain and suffering from a disability; however, to recover workers' compensation benefits, there must be evidence to establish that the employee's pain and disability are related to an on-the-job accident.
We must reverse the trial court's judgment finding Correll permanently, totally disabled. The trial court erred in considering the Chiari malformation and the syringomyelia in assessing Correll's disability incurred as a result of the May 31, 1995, on-the-job injury at Goodyear. There is no evidence in the record suggesting that Correll was permanently, totally disabled as a result of the May 1995 on-the-job injury to his cervical spine, which injury Correll established was related to that accident.
Dr. Zeiger assigned Correll a disability rating of 11% as a result of the 1995 cervical spine injury. The vocational experts, in assigning Correll either a 79% or a 100% disability rating, said that they reached those ratings by considering the restrictions the doctors had placed on Correll, many of which related to his lumbar back problems and to the Chiari-malformation and the syringomyelia. The vocational assessments were also impacted by Correll's chronic pain and depression, both of which are attributable to the Chiari malformation and the syringomyelia. However, there is not substantial evidence in the record to support a conclusion that the Chiari malformation and the syringomyelia are related to the May 31, 1995, injury for which Correll sought compensation.
We reverse the judgment of the trial court and remand this case to the trial court for that court to determine, from the evidence already presented, the extent of any disability Correll suffered as a result of the May 31, 1995, on-the-job injury.
REVERSED AND REMANDED.
Yates, Monroe, and Crawley, JJ., concur.
Robertson, P.J., dissents. *Page 630