Rel: August 16, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## SPECIAL TERM, 2024

_____

### CL-2024-0217

_____

**Victoryland**

**v.**

**Patricia Dianne Arnold**

**Appeal from Macon Circuit Court**
**(CV-08-46)**

MOORE, Presiding Judge.

Victoryland ("the employer") appeals from an amended judgment entered by the Macon Circuit Court ("the trial court") on February 13, 2024, denying the employer's petition to be relieved of liability for future medical expenses for a work-related back injury sustained by Patricia Dianne Arnold ("the employee").  We affirm the judgment.

Background

On August 19, 2006, the employee fell while working for the employer, injuring her lower back ("the 2006 work-related injury"). On May 8, 2008, the employee commenced a civil action against the employer in which she sought benefits from the employer pursuant to the Alabama Workers' Compensation Act ("the Act"), Ala. Code 1975, § 25-5-1 et seq. The parties reached an agreement that settled the workers' compensation claim, which was approved by the trial court in a judgment entered on June 16, 2009 ("the 2009 judgment"). The 2009 judgment provides, among other things, that liability for reasonably necessary medical expenses proximately resulting from the 2006 work-related injury is to be "open," i.e., the employer would remain liable for such medical expenses arising after the 2009 judgment.

On June 15, 2022, the employer filed a "motion for relief of order to provide future medical benefits under [the Act]." In that motion, the employer alleged that the employee had been involved in a motor-vehicle accident on October 4, 2018 ("the 2018 motor-vehicle accident") and that the employee had recovered damages in a settlement with the

third parties who were responsible for the 2018 motor-vehicle accident. In the "motion," the employer argued that the trial court should determine that it no longer owed the employee medical benefits pursuant to the 2009 judgment because, it said, the 2018 motor-vehicle accident was an intervening and superseding cause of her lower back problems and because the employee was judicially estopped from asserting that she continued to need medical treatment on account of the 2006 work-related injury. On April 10, 2023, the trial court purported to resolve that controversy by entering a judgment summarily denying the "motion." The employer timely appealed from that judgment.

In Victoryland v. Arnold, [Ms. CL-2023-0340, Jan. 5, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024) ("Arnold"), this court, citing Total Fire Protection, Inc. v. Jean, 160 So. 3d 795, 799 (Ala. Civ. App. 2014), held that the employer's "motion" was, in substance, a petition filed pursuant to Ala. Code 1975, § 25-5-81, a part of the Act, to resolve a controversy between the parties regarding the employee's right to future medical treatment under the 2009 judgment. In Arnold, this

court reversed the judgment and remanded the case with instructions for the trial court to enter written findings of fact and conclusions of law as required by Ala. Code 1975, § 25-5-88, a part of the Act.

On February 13, 2024, the trial court complied with our remand instructions by amending the judgment to make the required findings of fact and conclusions of law. In the amended judgment, the trial court, applying the standard adopted by our supreme court in Ex parte Pike County Commission, 740 So. 2d 1080 (Ala. 1999), determined that the 2018 motor-vehicle accident was not an intervening and superseding cause that relieved the employer of liability to pay for the employee's medical treatment for her lower back condition. The trial court also determined that the employee was not judicially estopped from claiming a right to continued medical benefits under the 2009 judgment. Accordingly, the trial court again denied the employer's petition to terminate its liability for future medical benefits. The employer timely appealed the amended judgment.

Issues

On appeal, the employer argues that the trial court should have determined that it no longer owes the employee medical benefits pursuant to the 2009 judgment because, it says, (1) the 2018 motor-vehicle accident is the intervening and superseding cause of her lower back condition and (2) the employee should be judicially estopped from claiming the benefits of the 2009 judgment.

Standard of Review

Section 25-5-81(e), Ala. Code 1975, a part of the Act, provides:

> "(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
>
> "(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence."

On appeal, a trial court's findings of fact are conclusive on this court if they are supported by substantial evidence. Edwards v. Jesse Stutts, Inc., 655 So. 2d 1012 (Ala. Civ. App. 1995). "Substantial evidence" is "'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the

5

existence of the fact sought to be proved.'" Ex parte Trinity Indus., Inc., 680 So. 2d 262, 268 (Ala. 1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989)); see also Ala. Code 1975, § 12-21-12(d).

## Analysis

### I.     Intervening and Superseding Cause

In Ex parte Pike County Commission, Fred Green injured his lower back and abdomen in a series of work-related accidents occurring between 1991 and May 1995. In September 1995, while at home, Green lifted a 12-pound baby and experienced a further onset of lower back and abdominal pain. Diagnostic testing after the baby-lifting episode revealed that Green had a herniated disk. Green's employer, the Pike County Commission, denied that the herniated disk was compensable. Green commenced a civil action seeking workers' compensation benefits for the injury. In a deposition taken in that action, Green's treating neurosurgeon opined that the previous work-related accidents had caused the herniated disk and that the baby-lifting episode had exacerbated the symptoms from the injury. The Pike Circuit Court

6

determined that Green had suffered a "recurrence" of his work-related injuries when lifting the baby and awarded Green workers' compensation benefits for the injury.  On appeal, this court affirmed the judgment.  <u>See</u> <u>Pike County Comm'n v. Green</u>, 740 So. 2d 1076 (Ala. Civ. App. 1998).

Our supreme court granted the Pike County Commission's petition for the writ of certiorari to review this court's decision.  The supreme court determined that the Pike Circuit Court and this court had erred by applying the "last injurious exposure" rule to determine the compensability of the injury, because, it said, that rule applies to disputes involving successive work-related injuries to determine which of two or more employers or workers' compensation insurance carriers should be responsible for the medical treatment and compensation owed to the injured employee.   Our supreme court said:

> "The considerations that apply to place workers' compensation responsibility on the current insurer 'are inapplicable when the subsequent injury is [not work-related].' <u>Warpinski v. State Indus. Ins. Sys.</u>, 103 Nev. 567, 569, 747 P.2d 227, 229 (1987). Instead, such cases are governed by the 'successive-compensable-injury' test. When determining whether a successive injury is compensable, the general rule is that '[w]hen the primary injury is shown to

7

have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to [the] claimant's own intentional conduct.' 1 [Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law,] § 13.00 [(1998)]. "In applying this rule to a factually similar case, the Supreme Court of Appeals of West Virginia held:

> "'[I]f a worker's compensation claimant shows that he received an initial injury which arose out of and in the course of his employment, then every normal consequence that flows from the injury likewise arises out of the employment. If, however, a subsequent aggravation of the initial injury arises from an independent intervening cause not attributable to the claimant's customary activity in light of his condition, then such aggravation is not compensable.
>
> "'Thus, the fact that the claimant is injured and then returns to work does not mean that he is foreclosed from demonstrating that the original injury became aggravated by some routine event which triggered its recurrence. Such routine event is ordinarily one where the claimant is doing an activity that would be customary in light of his condition.'

"Wilson v. Workers' Compensation Comm'r, 174 W.Va. 611, 616, 328 S.E.2d 485, 490 (1984); see also Lou Grubb Chevrolet, Inc. v. Industrial Comm'n, 174 Ariz. 23, 26, 846 P.2d 836, 839 (Ariz. App. 1992) ('[An] employee's reasonable conduct in causing a later nonindustrial injury does not relieve the employer of liability if the later injury is the "direct and natural result" of the compensable work injury.').

8

> Thus, 'a subsequent injury, whether an aggravation of an original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury.' 1 Larson, supra, § 13.11."

740 So. 2d at 1084. The supreme court determined that Green was entitled to workers' compensation benefits for the herniated disk under the successive-compensable-injury test because the injury was a direct and natural result of his work-related accident and his later act of lifting the baby, being "customary in light of [his] condition," was not an intervening and superseding cause of his condition. Id.

In the amended judgment in this case, the trial court applied the successive-compensable-injury test from Ex parte Pike County Commission to determine whether the 2018 motor-vehicle accident was an intervening and superseding cause of the employee's lower back injury. The employer agrees that the successive-compensable-injury test is the governing standard to resolve the controversy between the parties; the employer maintains, however, that the trial court erred by misapplying the successive-compensable-injury test to the facts of the case.

To establish the facts of the case, the employer submitted the depositions of the employee and Dr. Timothy Holt from the third-party action. In her deposition, the employee testified that she had experienced lower back pain since a 1990 motor-vehicle accident. She underwent a lumbar-spine-fusion surgery in 1991 that did not relieve her symptoms. In 2006, while working for the employer, the employee fell to the ground when a chair rolled away from her as she was sitting down. According to the employee, her back condition worsened following the 2006 work-related injury, resulting in muscle spasms and pain extending into her hips, buttocks, and legs. After years of dealing with those symptoms, the employee underwent a second lumbar-spine-fusion surgery in 2016. Following the 2016 surgery, the employee continued to suffer from lower back pain and associated symptoms for which she regularly used medication. The employee's pain became sharper and more localized after a screw in the hardware that had been placed in her lumbar spine broke in early 2018, and she was contemplating a third surgery to address that problem at the time of the 2018 motor-vehicle accident.

The employee testified that, on October 4, 2018, as part of her ordinary daily routine, she was operating an automobile owned by her daughter while driving two of her grandchildren to school. As she was passing through a construction zone on Notasulga Highway, a large dump truck improperly entered her lane of traffic from the right shoulder of the road, striking the passenger's side of the automobile and forcing the automobile to cross the opposing lane of traffic before coming to a rest on the left shoulder of the road. The employee testified that, the night following the 2018 motor-vehicle accident, she began experiencing increased pain in her lower back that radiated down her legs and that that pain had not abated since. The employee testified that the 2018 motor-vehicle accident had exacerbated her lower back condition. In April 2019, she underwent a third surgery, which, again, did not relieve her back pain. As of 2021, she was still experiencing daily back pain radiating into her legs, along with muscle spasms, which prevented her from engaging in activities that she was able to engage in before the 2018 motor-vehicle accident, and she was considering a fourth surgery to address those problems.

The parties to the third-party action deposed Dr. Timothy Holt twice. Dr. Holt is the orthopedic surgeon who was selected by the employer to treat the employee's 2006 work-related injury pursuant to § 25-5-77, a part of the Act. Dr. Holt testified in his depositions that he had performed the 2016 lumbar-spine-fusion surgery to address the employee's lingering pain and symptoms from the 2006 work-related injury. In early 2018, he determined that the employee was suffering from a condition known as pseudoarthrosis, which occurs when a fusion fails to completely stabilize the lumbar spine, and that one or more screws had broken in the hardware that he had installed in her spine during the 2016 lumbar-spine-fusion surgery. Before the 2018 motor-vehicle accident, Dr. Holt had recommended that the employee undergo a third surgery to address those problems. After the 2018 motor-vehicle accident, the employee reported worsened pain and increased symptoms. Dr. Holt reiterated his recommendation for surgery, which the employee eventually underwent in April 2019 without success. As of 2021, Dr. Holt was recommending that the employee either undergo

another surgery to her lumbar spine or consider implantation of a dorsal-column stimulator to block her pain.

Dr. Holt believed that the 2018 motor-vehicle accident probably had caused a broken screw in the 2016 fusion hardware to shift and damage the adjacent nerve in the employee's lumbar spine. Dr. Holt opined that the employee had permanently aggravated her preexisting lower back condition in the 2018 motor-vehicle accident. Dr. Holt testified that he considered the employee to have a "hybrid" injury emanating partially from the 2006 work-related back injury and partially from the aggravation of that injury by the 2018 motor-vehicle accident. Dr. Holt testified that he performed the April 2019 surgery to remove the broken hardware from the 2016 lumbar-spine-fusion surgery and to again attempt to stabilize the employee's lumbar spine through a different fusion technique. When the employee reported continuing pain and other symptoms following the 2019 surgery, Dr. Holt recommended implantation of the dorsal column stimulator as a last measure. Dr. Holt testified in his second deposition that he had recommended the dorsal column stimulator because of the employee's

13

increased and unrelenting pain resulting from the 2018 motor-vehicle accident, not from the 2006 work-related injury. Dr. Holt assigned the employee a 4% permanent impairment rating from the 2018 motor-vehicle accident.

Based on the foregoing deposition testimony, the trial court found that, as a result of the 2006 work-related injury, the employee had sustained an injury causing muscle spasms and pain in her lower back, hip, and buttocks; that, in 2016, the employee underwent a lumbar-spine-fusion surgery on account of the 2006 work-related injury; that, following the 2016 surgery, the employee had continued to suffer "ongoing, but manageable, pain and spasms"; that, at the time of the 2018 motor-vehicle accident, the employee was engaged in a customary activity in light of her condition when she was driving her grandchildren to school; that the 2018 motor-vehicle accident was not attributable to the employee's own intentional misconduct; that the 2018 motor-vehicle accident exacerbated the 2006 work-related injury by increasing the employee's "baseline" symptoms, "resulting in more severe pain, spasms, and damage to surgical hardware"; and that

14

> "[t]he increased pain and related symptoms are consistent with and related to the [2006 work-related] injury because ... the [employee's injury from the 2018 motor-vehicle accident] is consistent with [the 2006 work-related] injury and resulting spinal fusions combined with a vehicle collision. The issues involve the same area of the spine and differ only in the intensity and frequency of the pain/spasms."

From those facts, the trial court concluded that the 2018 motor-vehicle accident was not an intervening and superseding cause of the employee's lower back condition.

The employer contends that, upon finding that the 2018 motor-vehicle accident aggravated the employee's preexisting lower back condition, the trial court should have determined that her aggravated condition was not a direct and natural consequence of the 2006 work-related injury. Rather, the employer contends, the trial court should have concluded that the 2018 motor-vehicle accident was an "'independent intervening accident not attributable to the customary activity in light of [the employee]'s condition.'" Employer's brief, p. 20. Because the 2018 motor-vehicle accident was not a routine event or "customary activity," like the lifting of a baby was in Ex parte Pike County Commission, the employer contends that any aggravation of the

15

employee's preexisting condition should not be treated as a successive compensable injury.

In Ex parte Pike County Commission, the supreme court considered the aggravation of a work-related injury caused by the stress of an ordinary physical movement. Consequently, the opinion does not specifically address whether an unusual traumatic event, such as a motor-vehicle accident, that aggravates an original, compensable injury should be treated as an intervening and superseding cause. However, this court considered a similar scenario in Benton v. Winn-Dixie Montgomery, Inc., 705 So. 2d 495 (Ala. Civ. App. 1997).

In Benton, Scott Benton injured his lower back in a 1989 work-related accident, herniating the L4-L5 disc in his lumbar spine. Following two laminectomies and a lumbar-spine-fusion surgery at the L4-L5 and L5-S1 levels, Benton was released from medical care in 1993, and he settled his workers' compensation claim against his employer, leaving medical benefits open. In July 1994, Benton was involved in a motor-vehicle accident that resulted in injuries to the same parts of his body that had previously been injured in the 1989 work-related

16

accident. In 1996, the authorized treating surgeon performed surgery to address the injuries resulting from the 1994 motor-vehicle accident, which Benton's former employer refused to cover. Benton filed a petition in the Montgomery Circuit Court to require his former employer to pay for the 1996 surgery, but his claim was denied.

On appeal, this court reversed the judgment of the Montgomery Circuit Court. Benton's authorized treating surgeon testified that the 1996 surgery had addressed Benton's pseudoarthrosis, which was not due to the trauma of the 1994 motor-vehicle accident but was due solely to a failure of the 1992 fusion to adhere to Benton's spine. According to Benton's authorized treating surgeon, the surgery also addressed the fracture of the surgical mass at the L5-S1 area of the spine, which was due to the trauma from the 1994 motor-vehicle accident. The surgeon explained that those injuries would not have occurred without the preexisting fusion surgery and the weakened condition of Benton's lumbar spine. The surgeon opined that both the 1989 work-related accident and the 1994 motor-vehicle accident had contributed to the fracture. This court held that Benton had established the necessary

causal connection between the original, compensable injury and the 1996 surgery by presenting evidence indicating that the 1989 work-related accident and the 1994 motor-vehicle accident had combined to produce the injuries necessitating that treatment.

Although Benton predates Ex parte Pike County Commission, it applied the successive-compensable-injury test as set forth by this court in Erwin v. Harris, 474 So. 2d 1125, 1127 (Ala. Civ. App. 1985). In Erwin, this court said:

> "It is well established that, under general workmen's compensation law, an injury which occurs subsequent to an original, compensable injury is itself compensable if it is the direct and natural result of the original, compensable injury. 1 A. Larson, The Law of Workmen's Compensation, §§ 13.10, 13.11, 13.12 (2d ed. 1985). This rule applies regardless of whether the subsequent injury is an aggravation of the initial compensable injury or a new and distinct injury. Larson, supra. Therefore, if an injury occurs as the direct and natural result of the original, compensable injury, it is a reasonable conclusion that any medical expenses incurred by the employee for the subsequent injury are those that the employer is required to pay as 'reasonably necessary' under § 25-5-77(a). ...
>
> "The burden is upon the claimant to establish the causal connection between the initial, compensable injury and the subsequent injury for which benefits are sought."

18

474 So. 2d at 1127. In <u>Benton</u>, this court, citing <u>Erwin</u>, held that, to satisfy the successive-compensable-injury test, Benton had to prove a causal connection between the injuries sustained in the 1994 motor-vehicle accident and the original, compensable injuries sustained in his 1989 work-related accident. 705 So. 2d at 497. This court determined that Benton had met that burden by proving that the 1989 work-related injury and the intervening trauma from the 1994 motor-vehicle accident had both contributed to the medical conditions addressed in the 1996 surgery.

As <u>Benton</u> illustrates, under the successive-compensable-injury test as espoused in <u>Erwin</u>, an employer may remain liable for medical-treatment expenses necessitated by the aggravation of a preexisting work-related injury caused by trauma from a subsequent, nonoccupational motor-vehicle accident. <u>Ex parte Pike County Commission</u> basically adopted the same successive-compensable-injury test that this court applied in <u>Erwin</u> and <u>Benton</u>; however, <u>Ex parte Pike County Commission</u> additionally holds that an employee cannot recover workers' compensation benefits for a subsequent off-the-job

19

injury resulting from an intervening cause attributable to the employee's own intentional conduct. Thus, under Ex parte Pike County Commission, if an employee aggravates the original, compensable injury by intentionally engaging in activity unsuitable to his or her injured condition, the employer would not be liable for any medical-treatment expenses resulting from the aggravation. In this case, the employer does not contend that the employee was operating her automobile intentionally in disregard of medical restrictions or in such a manner as to cause the 2018 motor-vehicle accident. The evidence shows, as the trial court found, that the employee was operating her automobile routinely as she was driving two of her grandchildren to school and that she was engaged in a customary activity in light of her condition when the 2018 motor-vehicle accident occurred. Although the 2018 motor-vehicle accident itself was an unusual traumatic event, it was not an intervening cause attributable to the employee's own intentional conduct. See Cannon v. Goodyear Tire & Rubber Co., 171 N.C. App. 254, 261, 614 S.E.2d 440, 445 (2005) ("We find that, regardless of whether plaintiff was en route to receive treatment for his

work-related injury, the automobile accident was not an independent intervening cause because it did not result from plaintiff's own intentional conduct.").

Like in <u>Benton</u>, substantial evidence supports the trial court's determination of a causal connection between the 2006 work-related injury and the injury that the employee sustained in the 2018 motor-vehicle accident. Before the 2018 motor-vehicle accident, the employee had developed pseudoarthrosis and a fractured surgical site as a direct and natural consequence of the 2006 work-related injury. The 2018 motor-vehicle accident aggravated the employee's 2006 work-related injury, resulting in increased pain and other recurring symptoms. The trauma from the 2018 motor-vehicle accident acted upon the weakened condition of the employee's lumbar spine to produce further and more intensive injuries to that same area for which the employee continues to require medical care.[1] The trial court properly applied the successive-

---

[1]Although Dr. Holt testified at one point in his second deposition that he attributed the need for the dorsal column stimulator solely to the 2018 motor-vehicle accident, the trial court was not bound to conclude that that treatment was not compensable. Dr. Holt had earlier explained that he had recommended that treatment due to the

compensable-injury test in determining that the employer remains liable for such treatment. We find no basis for reversing the trial court's judgment on this ground.

## II.    Judicial Estoppel

The employer next contends that the employee should be judicially estopped from asserting her right to continuing medical care under the 2009 judgment. The affirmative defense of judicial estoppel precludes a party from assuming a position in a legal proceeding inconsistent with one previously asserted in another legal proceeding. Ex parte First Alabama Bank, 883 So. 2d 1236, 1244-45 (Ala. 2003). On October 2, 2019, the employee commenced a civil action against, among other defendants, the operator of the dump truck and his employer. The employer maintains that the employee asserted inconsistent positions

_____

increased pain that the employee experienced following the aggravation of the 2006 work-related injury by the 2018 motor-vehicle accident. Considering the entirety of Dr. Holt's deposition testimony in context, see McGough v. G & A, Inc., 999 So. 2d 898, 905 (Ala. Civ. App. 2007) (stating that, in deciding whether deposition testimony meets substantial-evidence test, court must not consider excerpts of testimony abstractly, but must consider the deposition testimony as a whole), the trial court reasonably could have concluded that the treatment was compensable under the successive-compensable-injury test.

as to the cause of her current lower back problems in the third-party action and in the underlying workers' compensation case. According to the employer, the employee claimed in the third-party action that she had aggravated her preexisting lower back condition in the 2018 motor-vehicle accident, whereas in the underlying workers' compensation case the employee "now maintains that her current back injury is not the result of [the 2018] motor[-]vehicle accident ... but rather is the 'natural progression' of her [2006 work-related injury]." Employer's brief, p. 27.

In the amended judgment, the trial court rejected the employer's judicial-estoppel defense, finding that the employee had not assumed inconsistent positions in the two legal proceedings. We agree.

In her deposition in the third-party action, the employee claimed that she had aggravated her 2006 work-related injury in the 2018 motor-vehicle accident. In response to the employer's petition in the underlying workers' compensation case, the employee maintained that identical position -- that she had aggravated the 2006 work-related injury in the 2018 motor-vehicle accident. In her response, the employee further argued that "[s]uffering an aggravation of a lower

23

back condition after being involved in a motor vehicle accident is a natural, readily foreseeable consequence for a person who already suffers from an injury in that area of the body." That argument is not inconsistent with her position in the third-party action; it is only an explanation as to why the aggravation of her 2006 work-related injury caused by the trauma of the 2018 motor-vehicle accident should also be considered compensable under the successive-compensable-injury test.

For judicial estoppel to apply, a party's later position must be "clearly inconsistent" with its earlier position. White Tiger Graphics, Inc. v. Clemons, 88 So. 3d 908, 911 (Ala. Civ. App. 2012). It is not "clearly inconsistent" for an employee to claim damages from a third party on account of the aggravation of a work-related injury and to also maintain a claim for workers' compensation medical benefits from an employer for the same aggravation. Section 25-5-77 places primary responsibility upon the employer to pay for reasonably necessary medical treatment incurred by an injured employee on account of a work-related injury. However, if the work-related injury occurs under circumstances also creating a legal liability for damages on the part of a

24

party other than the employer, the employee may seek civil damages from the third party to cover the same medical expenses under Ala. Code 1975, § 25-5-11(a). If the employee elects to pursue a third-party recovery, the employee is not thereby precluded from also pursuing his or her remedy against the employer for the same medical benefits. See generally Ex parte Williams, 895 So. 2d 924, 927 (Ala. 2004). Rather, in the event of a recovery against the third party, the employer is entitled to subrogate to obtain reimbursement of its outlay for the medical treatment. See § 25-5-11(a).

The evidence in the record shows that, following the 2018 motor-vehicle accident, the employer continued to authorize Dr. Holt to treat the employee for her aggravated condition. The employer, through the Alabama Self-Insured Compensation Fund ("the Fund"), expended over $85,000 to pay for the April 2019 surgery and the subsequent treatment that the employee received. On February 1, 2022, the Fund intervened in the third-party action to assert its subrogation rights under § 25-5-11(a) against any recovery the employee might obtain from the third parties. After the employee reached a confidential settlement in the

third-party action, the employee paid the Fund $46,950.81 to satisfy its subrogation interest in the settlement, which amount was determined in accordance with Fitch v. Insurance Co. of North America, 408 So. 2d 1017 (Ala. Civ. App. 1981) (setting forth the formula for determining the amount of any third-party recovery an employer retains under § 25-5-11(e) following payment of attorney's fees).

After receiving the funds from the third-party recovery, the employer filed its petition to be relieved of any further liability to the employee for workers' compensation medical benefits, asserting that the employee was judicially estopped from enforcing her rights to medical care under the 2009 judgment. We agree with the trial court that the defense of judicial estoppel does not apply in this case. In the third-party action, the employee essentially claimed that the 2018 motor-vehicle accident had created a legal liability on the part of the third parties to cover the costs of the reasonably necessary medical treatment that the employee had incurred and would incur for the aggravation of the 2006 work-related injury. That claim does not conflict with her claim against the employer to provide continuing medical care to her

26

pursuant to the 2009 judgment and § 25-5-77 under the theory that the employer remains liable pursuant to the successive-compensable-injury test. The trial court properly rejected the employee's judicial-estoppel defense, and we find no basis for reversing its judgment on this ground.

## Conclusion

We conclude that the trial court did not err in denying the employer's petition to be relieved of its liability to provide the employee medical benefits pursuant to the 2009 judgment approving the parties' workers' compensation settlement agreement. Therefore, we affirm the trial court's judgment.

AFFIRMED.

Hanson, Fridy, and Lewis, JJ., concur.

Edwards, J., recuses herself.